CLARA E. SHEEHAN *vs.* JAMES H. STRONG.

JOHN SHEEHAN *vs.* SAME.

Suffolk.    October 20, 1926. — November 24, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Of nurse.   *Evidence,* Matter of conjecture.

At the trial of an action against the proprietor of a hospital for personal injuries received from an abscess which formed where a hypodermic injection was made and which was alleged to have been caused by negligence of a nurse in the defendant's employ, the plaintiff testified that the nurse in a darkened room rubbed her thigh with a cold substance, and then inserted a hypodermic needle in a different spot from that where the cold application was made, and that she believed that such injection caused the abscess.   There was no evidence that the needle was infected.   The remaining testimony was by physicians and surgeons and was merely to the effect that, if the needle was properly sterilized but the place where it was inserted was not washed or cleaned, this would not necessarily lead to the conclusion that an abscess would form; but that the abscess that did form might have resulted from any one of several causes.   *Held*, that the cause of the abscess was left to conjecture, and a verdict for the defendant should have been ordered.

TWO ACTIONS OF TORT, the first for personal injuries alleged to have resulted from negligence of a nurse employed in a hospital maintained by the defendant; and the second by the husband of the plaintiff in the first action for consequential damages.   Writs dated February 7, 1922.

In the Superior Court, the actions were tried together before *Fosdick*, J. Material evidence is described in the opinion. There was a verdict for the plaintiff in the first action in the sum of $500 and for the plaintiff in the second action in the sum of $100.

The record states as follows:.

"The defendant, at the close of the plaintiffs' cases and again at the close of the defendant's case, requested the court to direct a verdict in accordance with G. L. c. 231, § 120, said motions being as follows: 'Now comes the defendant in the above entitled cause and moves that the court enter a verdict for the defendant in accordance with the leave reserved as provided in G. L. c. 231, § 120. . . .' Both of these motions the court refused to give and to the refusals the defendant saved his exceptions."

A bill of exceptions filed by the defendant and allowed by the trial judge later was amended extensively by leave of court, among other particulars by adding the following paragraph:

"The defendant being aggrieved by the refusal of the court to direct a verdict for the defendant in both of the above entitled actions and being further aggrieved by the refusal of the court to give the defendant's requests for the rulings and instructions to the jury as requested by the defendant in the above entitled actions, and by the refusal of the court to direct a verdict for the defendant in the above entitled actions and by the refusal of the court to make reservation, in accordance with G. L. c. 231, § 120, prays that his bill of exceptions may be allowed."

The case was submitted on briefs.

*G. H. Shields*, for the defendant.

*J. J. Leonard, R. W. Frost, & M. B. Breath*, for the plaintiffs.

CROSBY, J. These are actions of tort to recover for injuries alleged to have been received by the plaintiff in the first case at the private hospital of the defendant, and alleged to have been caused by the negligence of a nurse in his employ. The second action is brought by the husband of the plaintiff in the first case to recover for consequential

damages.  The female plaintiff will hereafter be referred
to as the plaintiff.

The defendant at the time of the alleged negligence and
for a long time prior thereto conducted a private hospital
for the care of medical and surgical cases.  Various physi-
cians in no way connected with the hospital sent patients
there, and had full charge and control of their patients,
their diet, care, surgical operations, and the exclusive direc-
tion and control of the defendant's hospital nurses who
attended such patients, the services of the nurses being
paid for by the defendant.

The plaintiff's family physician, Dr. Gately, engaged a
bed in a ward in the hospital for her and she went there on
December 2, 1921, for observation; for a year and a half
before that time she had been suffering from a chronic gall
bladder condition.  Dr. Gately had previously sent surgical
cases to the hospital.  He employed Dr. Walker, who per-
formed the gall bladder operation, on December 6, 1921.
Neither of these physicians had any connection with the
hospital.  Three days after the operation an abscess formed
on the right thigh of the plaintiff at a place where injections
of pituitrin had been made.

The plaintiff testified that she was operated on at about
eight o'clock in the morning of December 6; that three
injections only were made during her stay at the hospital and
that these occurred on the night following the operation, the
first at eleven o'clock in her left thigh, the second an hour
later in the same thigh, and the third an hour later in her
right thigh; that at the time of the third injection the ward
she was in was dark, the lights not being turned on; that at
the time of this injection she was lying on her back, swathed
in bandages from the operation, and was suffering pain; that
before this injection was made she felt the nurse rub her
thigh with some cold substance and then inject a needle into
a different spot from where the cold application was made;
"that she could not see the nurse making the injection.  That
the nurse seemed to be in a hurry in the manner and method
of making this injection."  She further testified that she

believed that this injection caused the abscess. The only negligence complained of relates to this injection.

Dr. Walker testified that, while he did not recall giving instructions to the nurses to give injections of pituitrin if gas developed, he might have given such instructions. No contention is made by the plaintiff that it was not a proper remedy to be administered if proper precautions were taken to prevent infection. There was evidence that before the needle is inserted the skin should be cleansed and some suitable antiseptic applied.

The question is, whether there was any evidence warranting a finding of negligence, if it be assumed that the defendant is responsible for the carelessness of the nurse in administering the injection.

The defendant offered evidence tending to show that the room was well lighted, that the injection was not hurriedly made, that the place where the needle was inserted was properly sterilized, and that the injection in all respects was properly administered.

Considering the evidence in the light most favorable to the plaintiff, we are unable to find any evidence which would warrant a finding of negligence. There was no evidence that the hypodermic needle used was infected, or that the abscess was due to an infection. Dr. Walker, who was called by the plaintiff, testified that he did not know what caused the abscess; that if the skin had not been properly washed he could not say that it was the cause, but that it might be the cause. He further testified that he would not go so far as to say that the abscess was probably caused by failure to wash the skin, that it might have been caused by a condition of the skin of the patient, or that the solution injected might have been unsterile when it came from the manufacturer. He testified in cross-examination that if the needle was properly sterilized, but the place where it was inserted was not washed or cleaned, it would not necessarily lead him to believe that an abscess would form.

Dr. Gately, also called by the plaintiff, testified that he and Dr. Walker ordered the nurse to inject pituitrin; that he (the witness) ordered it injected every six hours; that various

things might have caused the abscess, such as a skin disease that would be carried by an injection through the outer skin, absorbent cotton, or the pituitrin itself (an irritant) meeting with the contents from the gall bladder which coursed through the blood stream of the plaintiff; that no one could say what caused it; that a germ on the skin might cause it, and if the skin was not properly washed the liability of infection would be increased.

There was other evidence offered by the plaintiff tending to show that she had jaundice and diabetes, and that an abscess would be more likely to develop if a person was suffering from the latter disease. Although several physicians testified, none of them were able to express an opinion as to what caused the abscess. In these circumstances there was nothing to show that any act or omission of the nurse resulted in the formation of the abscess. Its cause was wholly a matter of conjecture and speculation without evidence to support a finding of negligence on the part of the nurse. It follows that the defendant's motion for a directed verdict in each case should have been allowed.

The plaintiff's contention that the defendant did not properly save his rights, for the reason that the motion in each case was that a verdict be entered for the defendant "in accordance with the leave reserved as provided in G. L. c. 231, § 120" cannot be sustained. It is recited in the amended bill of exceptions that "The Defendant being aggrieved by the refusal of the court to direct a verdict for the defendant in both of the above entitled actions . . . prays that his bill of exceptions may be allowed." It thus appears that the motions for directed verdicts were properly made independently of that part of the motions relating to G. L. c. 231, § 120. See *Carp* v. *Kaplan*, 251 Mass. 225. *W. A. Webster Co.* v. *Guaranty Mortgage & Securities Corp. ante*, 342.

As the motions should have been allowed, we need not consider the requests for rulings. In each case the exceptions must be sustained, and in accordance with G. L. c. 231, § 122, judgment may be entered for the defendant.

*So ordered.*