## KASTER v. WOODSON et al.
### `No. 8776.

Court of Civil Appeals of Texas. Austin.
Dec. 14, 1938.

Rehearing Denied Jan. 18, 1939.

Winbourn Pearce, of Temple, for appellant.

John B. Daniel, of Temple, for appellees.

BLAIR, Justice.

Appellant, J. J. Kaster, sued appellees, Dr. W. B. Woodson, and Drs. W. B. Woodson and P. B. Woodson, as partners, for damages alleged to have resulted from a hypodermic needle infection to appellant's arm, which he received in connection with a tonsil operation performed by Dr. W. B. Woodson. He alleged that the infection was caused by the negligence of the employee or employees of appellees, (1) in failing to properly and sufficiently sterilize the hypodermic needle; (2) in failing to properly and sufficiently sterilize the skin of appellant's arm where the needle entered; (3) in failing to properly and sufficiently sterilize the solution injected into

appellant's arm; and (4) in failing to use a solution for said injection which was properly sterilized.

At the conclusion of appellant's evidence, the trial court instructed a verdict for appellees upon the grounds that appellant offered no expert medical testimony that the infection in his arm was caused by anything done or omitted to be done by appellees, or their employee or employees; and that there was no evidence adduced by appellant showing a causal connection between the wrong complained of and the injury resulting. The trial court's judgment must be affirmed.

Appellant alleged the four specific grounds of negligence above stated. No testimony of any character was offered, except non-expert testimony with respect to the first and second grounds, (1) that the employees failed to properly and sufficiently sterilize the hypodermic needle, and (2) failed to properly and sufficiently sterilize the skin of appellant's arm where the needle entered. On these grounds, appellant testified that he entered the Woodson Clinic which is operated in connection with the Scott & White Hospital, for a tonsil operation. In preparation for the operation, the nurse, who for the purposes of the operation was employed jointly by the Scott & White Hospital and the Woodson Clinic, went to appellant's room and gave him some character of sedative tablet; later she returned and gave him a hypodermic injection of morphine in the right arm, which put him to sleep. While he was asleep he was taken to the operating room, and when Dr. Woodson was further preparing him for the tonsillectomy he suddenly awakened and raised himself to a sitting position; whereupon Dr. Woodson instructed the nurse to give another hypodermic injection, which she immediately did; and shortly thereafter appellant went to sleep and knew no more until after the operation was concluded. He testified that at the time he awakened he heard the doctor order the nurse to give him another hypodermic; and that she immediately turned and picked up the hypodermic syringe and, without sterilizing the needle or without sterilizing his arm, injected it into his arm a little above his elbow; that after the operation the most severe pain he had was where he testified the needle entered his arm; that on the following day he went to a hotel, and returned daily for

inspection; that he complained to the nurse on the following morning, calling attention to the fact that a knot existed where the needle entered his arm, and that he was suffering pain from it. He requested the nurse who had given the hypodermic injection to see if the needle had not been broken off in his arm. She made an inspection of the needle and found that it had not been broken off in appellant's arm. After three or four days his arm became swollen at the place where the needle entered; and when he next saw Dr. Woodson, some three or four days after the operation, Dr. Woodson told him that it was a case for a surgeon, and called Dr. Brindley, who was connected with the Scott & White Hospital. After an examination on that date by Dr. Brindley, he prepared appellant for an operation on his arm at 7 o'clock the following morning, one week from the date of the tonsillectomy. Deep incisions were required to be made, from which appellant suffered great mental and physical pain.

There was no testimony by a medical expert that the infection in appellant's arm was caused by the injection of the hypodermic needle, nor that the infection resulted from either of the specific negligent acts alleged by appellant. The oral deposition of Dr. Woodson was taken before the trial, and the part of it introduced read as follows:

"Q. The hypodermic and needle—you can sterilize them so there absolutely would be no chance for infection to come from the hypodermic or needle? A. That's right."

This evidence proves nothing with respect to the cause of the infection of appellant's arm; and other than the fact that the place where appellant thought the needle entered his arm became sore and later became infected, there is no evidence of any kind as to the cause of the infection.

In the case of Floyd v. Michie, 11 S.W.2d 657, this court held as follows. [page 658]: "The law entertains in favor of a physician the presumption that he has discharged his full duty, and to defeat this presumption the law exacts affirmative proof of breach of duty coupled with affirmative proof that such breach of duty resulted in injury. Negligence is never imputed from results, nor is any inference

thereof indulged in against a physician. The plaintiffs' evidence in this case failing to meet the law's requirements, the court properly directed a verdict for the defendants Michie and Griffin. * * * To warrant the finding of civil malpractice there must be expert medical testimony to establish it and to establish the additional fact that death resulted from such malpractice. There being no expert medical testimony establishing such issues, the court properly instructed a verdict for the defendants."

To the same effect are: Phillips v. Wright, Tex.Civ.App., 81 S.W.2d 129, Morris v. Weene, 258 Mass. 178, 154 N.E. 860, and Sheehan v. Strong, 257 Mass. 525, 154 N.E. 253.

What is an infection and from whence did it come are matters determinable only by medical experts. "Infection" has been defined as being the subtle or virulent matter proceeding from diseased bodies and imparting same to others. Stryker v. Crane, 33 Neb. 690, 50 N.W. 1132. Or, as applied in the instant case, infection means internal inflammation where pus is formed by the presence of pus germs. So, without medical testimony as to the probable cause of an infection or its source, the court and jury are not qualified to pass upon the question. The mere fact that infection set up in appellant's arm three or four days after a hypodermic needle was injected will not suffice as proof that the physician, or his nurse who gave the injection, was negligent in failing to sterilize the needle or skin of appellant's arm before the injection. Infection comes from many sources, and there must be affirmative proof of such negligence or lack of care, and that the injuries complained of resulted therefrom; and such proof can only be established by the testimony of experts skilled in the medical and surgical profession. The courts and juries are not supposed to be conversant with what is peculiar with the science and practice of the profession of medicine and surgery. Such has been the law in all civilized nations since in his Politics, Aristotle wrote: "As the physician ought to be judged by the physician, so ought men to be judged by their peers."

The judgment of the trial court will be affirmed.

Affirmed.