**Linda Sue GIBSON, Ind. and as Guardian of Estates of Rhonda Lynn Gibson et al., Appellants,**

**v.**

**Jack W. AVERY, M.D., et al., Appellees.**

**No. 17157.**

Court of Civil Appeals of Texas, Fort Worth.

Dec. 18, 1970.

Rehearing Denied Jan. 22, 1971.

John Elstrand, Fort Worth, Leo Freedman, Pasadena, Talbert, Giessel, Barnett & Stone, and Robert C. Barnett, Houston, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, William B. David, and Richard L. Griffith, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

This is a medical malpractice case brought against two practicing physicians, Jack W. Avery, M. D. and Karl K. Bird-

song, M. D., by the surviving wife and children of Bobby Ray Gibson, deceased, a patient of the appellees, for damages alleged to have been sustained by virtue of Gibson's death.

Plaintiffs contended that both doctors were guilty of acts of negligence that proximately caused Mr. Gibson's death. The trial was before a jury and at the close of the plaintiffs' evidence the trial court instructed a verdict for both defendants and rendered judgment in their behalf and the plaintiffs are here appealing from that decree.

At the time in question Mr. Gibson was a 208 pound male of robust stature and apparently otherwise in good health at the time that he entered the hospital on December 3, 1965, except that he then had a history of one day's vomiting and abdominal pain. Dr. Avery diagnosed Gibson's ailment as appendicitis and while he was being prepared for surgery he had a cardiac arrest. Dr. Birdsong gave Gibson the anesthetic preparatory to the operation. It was after the anesthetic had been given but before the operation had actually started or any incision made that Gibson's cardiac arrest occurred. Dr. Avery was Gibson's family doctor and was the operating surgeon on the occasion in question. There was evidence that as a result of the cardiac arrest Gibson sustained severe brain damage and later died without ever regaining consciousness. The death occurred May 12, 1966.

The plaintiffs alleged in their petition on which they went to trial that Dr. Avery was negligent in that after this cardiac arrest occurred he failed to perform an effective and proper cardiac massage and that this negligence proximately caused Gibson's brain damage and death.

Although the plaintiffs perfected an appeal from that part of the judgment that denied them a recovery from Dr. Birdsong, they do not present any points on the appeal claiming the trial court erred in rendering that part of the judgment.

We therefore affirm that part of the judgment that denied plaintiffs a recovery from Dr. Birdsong.

■ The plaintiffs' first point of error contends that the trial court erred in not permitting Dr. Mannaheimer, an M. D., to testify as to his opinions and conclusions as to the possible causes of the death of Bobby Ray Gibson.

The following proceedings reflect what occurred. Counsel for plaintiffs asked this question: "All right, sir. Doctor, assume that on December 3, 1965 a six foot, thirty-two year old, well developed, well nourished, two hundred eight pound male, otherwise healthy, except for possible acute appendicitis, suffered a cardiac arrest while being anesthetized for surgery and the anesthesiologist in charge believed the arrest to have been for forty to fifty seconds duration and such patient never regained consciousness and died on May 12, 1966 because of cerebral, decorticated brain damage, secondary to cardiac arrest, the surgeon in charge began external cardiac massage and continued same until relieved by another doctor several minutes later.

"Do you have an opinion as to whether or not anything the anesthesiologist or the surgeon did, or failed to do, which, in reasonable probability, caused or contributed to the cause of the death of the deceased."

Defense counsel objected to this question on the grounds that the answer to the question was couched in terms solely of possibilities and theoretical possibilities and theory; because the answer was not couched in terms of what is reasonable, medical probabilities as is required in a medical malpractice case.

The court then sustained this objection, because the answer was based on possibilities.

The record shows that the witness' answer would have been as follows: "Well, it is possible that the anesthesiologist may have been amiss in detecting the cardiac arrest at the very time that it occurred,

and only continuous monitoring will safeguard against overlooking a catastrophe like this.

"The anesthesiologist may have detected the arrest in time but instituted ventilation too late or ineffectively.

"Those are the theoretical possibilities.

"The surgeon may have performed massage in time, but not adequately.

"Now, since the brain, but not the heart, suffered irreversible damage, the cause may have been either ineffective massage, or second, effective massage but initiated too late. That is, too late for the brain, but still in time for the heart to recover, or a combination of the first and the second fact, and last, effective massage, also initiated on time, but associated factors causing brain damage, namely, arteriosclerosis of the cardiac arteries, or other factors supplying the brain, and this can be proven or disproven by a postmortem examination."

The trial court erred in sustaining the objection to the question and answer.

■ It appears to us to now be settled in Texas that a medical expert can testify as to his opinion as to the cause which produced or probably produced, or might have produced or which could possibly have produced a certain physical condition that either now exists or that has existed in the past. See Lenger v. Physician's General Hospital, Inc., 455 S.W.2d 703 (Tex.Sup., 1970), and Texas Employers' Ins. Ass'n v. Talmadge, 256 S.W.2d 945 (Beaumont Tex.Civ.App., 1953, ref., n. r. e.). We hold that this rule applies to a medical malpractice case as well as to other type cases.

The case of Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (Tex.Sup., 1949), is not decisive of the point we are now discussing.

■ It is true that before plaintiff rests in a case such as this his whole evidence must show at least a reasonable probability that plaintiff's complications were caused by defendant's negligence. See the Lenger case, supra, 455 S.W.2d at page 706.

■ This Lenger case makes it clear that even though the rule just stated is the law, that testimony of experts as to the possible causes of a plaintiff's present or past condition are admissible and are relevant to be considered by the fact finder in passing on the ultimate issue of causation.

■ Appellants' second point is that the trial court erred in excluding a part of an answer of the witness, Sam Fort, given in answer to a question asked by appellants' counsel. The question was: "Now, can you describe for the Court and Jury the character, kind and character of cardiac massage that you saw Dr. Avery giving the patient?"

The court admitted the following part of the witness' answer: "Yes, Dr. Avery was not pressing firmly on the chest, just almost a gentle massaging or something. It wasn't any that—it was very gentle."

The following was also given by the witness as a part of his answer to the above question and the court excluded it: "It was very gentle, probably depressing the patient's chest an inch or so, would be my guess." It is claimed that the exclusion of this part of the answer was error.

There was testimony in the record that the proper manner of giving an external heart massage was to place the flat of the hand against the bottom of the sternum and apply pressure so as to indent the patient's chest 2 to 3 inches at the rate of 60 per minute, and that it was important that the pressure be applied briskly.

It is obvious that this evidence was being offered on the issue of whether or not Dr. Avery was guilty of negligence in not applying a proper and effective external heart massage upon the occasion in question.

The witness, Sam Fort, was employed at All Saint's Hospital at the time in question as a cardiograph operator. When the cardiac arrest occurred he was called into the operating room with his machine and actually witnessed the external heart massage that is in question that was applied by Dr. Avery following Mr. Gibson's cardiac arrest. The witness had himself had training in giving external heart massage and had witnessed the giving of many such massages by doctors on various occasions. The witness had also performed numerous heart massages himself.

We are convinced that the trial court erred in excluding that part of the witness Fort's answer as indicated above.

The record shows that Fort was actually an eyewitness to the way and manner that the heart massage in question was being performed by Dr. Avery. The plaintiffs were entitled to have this eyewitness describe to the jury what he saw Dr. Avery do while performing the heart massage. It is true that testimony which constitutes a pure guess without basis in fact is not admissible. However, even though it is practically impossible for an eyewitness to tell exactly how fast a vehicle is moving or how far away one object is from another, it is permissible for him to state as evidence his best estimate as to the speed of a vehicle or as to the distance between two objects. Such testimony is called for and admitted in nearly every car wreck case that is ever tried. The testimony in question is of a similar nature.

■ The excluded testimony, even though the witness did use the words "I guess", was in its nature the estimate or opinion of an eyewitness as to the distance he saw Dr. Avery depress Mr. Gibson's sternum while performing the heart massage in question. Such evidence was material to the facts in issue in this case and was admissible in evidence.

See on this McCormick & Ray, Texas Law of Evidence, Second Edition, Section 1398, "General Test for Receiving Opinions of Lay Witnesses * * * (Understanding, Impression, Belief, etc.)." The following is from page 229: "Of course the form of the expression is not controlling as to the statement's admissibility. * * * Conversely, a statement in the form of a ratiocinative opinion may be a statement of fact within the knowledge of the witness. Thus, where it appears that a witness is testifying to facts from his own observation but that his observation was uncertain, or his recollection is unclear he may qualify his testimony by the use of such phrases as 'I believe,' 'I think,' 'It is my impression,' without detracting from its admissibility." See also McMillian v. Sims, 112 S.W.2d 793 (Galveston, Tex.Civ.App., 1937, writ dism. agr.).

Appellants' third point is that the trial court erred in directing a verdict for Dr. Avery and in rendering judgment for him.

In the Lenger case, supra, the Supreme Court said at page 707 of 455 S.W.2d: "In disposing of the present appeal, we consider all of Dr. Rainone's testimony, including that which was admitted and that which is found in the bill of exception."

In that case, too, testimony had been erroneously excluded and a verdict then instructed for defendant.

We are therefore obliged in passing on appellants' third point to consider as a part of the evidence the evidence that was admitted during the trial plus the two items of evidence which we have indicated above were erroneously excluded by the trial court.

Before the appellants rested their witness, Fort, had given testimony as to the proper manner of giving an external heart massage as has been hereinabove indicated.

Appellants' witness, Dr. Mannaheimer, testified to qualifications that would justify a jury in believing that he was an expert in the field of detecting and treating cardiac arrest by the application of external heart massage. He testified that the methods and standards of practice in this field are es-

sentially the same in all major hospitals in Texas and that the kind and character of cardiac massage that standards of practice require on a male the age and build of Mr. Gibson is done by compressing the patient's heart between his breastbone and the vertebrae at the rate of between 60 and 80 times a minute, pausing every 3 or 4 seconds to allow expansion of the lungs. In a big patient such massage had to be brisk.

■ When the above testimony is considered along with the description by Fort as to the type of massage that Dr. Avery applied following the cardiac arrest, we think there was evidence entitling appellants to get to the jury on the question of whether or not Dr. Avery was negligent in the way and manner that he performed the heart massage in question.

The question remaining is whether appellants introduced evidence entitling them to get to the jury on the question of whether or not negligence of Dr. Avery, if any, was a proximate cause of the brain damage and death of Mr. Gibson.

■ The rules applicable on appeal in determining whether or not an instructed verdict is proper in a medical malpractice case such as this are set out in Constant v. Howe, 436 S.W.2d 115 (Tex.Sup., 1968). On an appeal from an instructed verdict for the doctor the appellate court must accept as true the evidence in the record supporting the plaintiff's allegations of negligence against the doctor and in determining such questions on appeal all conflicts and inconsistencies in the evidence must be resolved by the appellate court in favor of the plaintiff and the appellate court must draw all inferences from the evidence in a manner most favorable to the plaintiff's alleged case.

In the case of Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (Tex.Sup., 1949), the court stated the following at page 782: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves

by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that is was a proximate cause of the patient's injuries. (Cites cases.)"

In this case the plaintiffs did not produce an expert medical witness from Dr. Avery's own school of practice to testify directly that in his opinion Mr. Gibson's brain damage and death in reasonable probability resulted from the way and manner that Dr. Avery performed the external heart massage.

Plaintiffs rely in part on the testimony of Dr. Mannaheimer as to possible causes of Mr. Gibson's brain damage and death to furnish the necessary evidence to get them to the jury on the proximate cause issue. This is the same testimony that the trial court excluded and which is the subject matter of appellants' point No. 1. It is set out above in this opinion, and as stated, in passing on this directed verdict point we consider it as being a part of plaintiffs' evidence.

In this excluded testimony Dr. Mannaheimer stated as possible causes of Mr. Gibson's brain damage and death the following: (1) failure of the anesthesiologist to detect the arrest in time and notify the surgeon; (2) the failure of the anesthesiologist to institute effective ventilation soon enough; (3) the failure of the surgeon to conduct proper external heart massage; (4) the failure to institute heart massage soon enough for the brain to recover; and (5) even though effective heart massage was instituted soon enough, associated factors causing brain damage could be present, namely, arteriosclerosis of the cardiac arteries, or other factors supplying the brain, the presence of which can be proved by a postmortem examination.

The plaintiffs here contend that they proved by Dr. Mannaheimer, an expert witness, the possible causes of Mr. Gibson's brain damage and death. They contend that they then proceeded by expert testi-

mony to eliminate the presence in this particular case of all such possible causes except one, namely, the failure of Dr. Avery to perform a proper external heart massage on Mr. Gibson. They contend that by this process of elimination they have made out a case to get them to the jury on the issue of whether or not the improper heart massage, if any, applied by Dr. Avery, was a proximate cause of Gibson's brain damage and death.

Plaintiffs have not referred us to a case holding that a medical malpractice case can be proved up by a process of elimination of possible causes, such as the process they rely on here. We have not found such a case. We also conclude that we are not required to decide that question here because the record does not support plaintiffs' claim that they have offered evidence to eliminate all possible causes of Gibson's brain damage and death as stated by Dr. Mannaheimer.

Our analysis of Dr. Mannaheimer's testimony is that it did no more than list several things that he could think of as being possible causes of Mr. Gibson's brain damage and death. No witness testified that in his opinion a particular act or omission of Dr. Avery's probably caused such damage or death. No witness testified that the *only* possible causes of Mr. Gibson's brain damage and death were those possible causes that Dr. Mannaheimer testified to as outlined above.

In addition to what we have just said, our examination of the statement of facts reveals that there was no evidence offered by plaintiffs at all to negative possible cause No. 2 as outlined by Dr. Mannaheimer. In other words, the record shows nothing as to whether the anesthesiologist, Dr. Birdsong, instituted effective ventilation on Gibson immediately following the cardiac arrest.

Dr. Mannaheimer stated that a possible cause of Mr. Gibson's brain damage and death was arteriosclerosis of the cardiac arteries, or *other factors supplying the brain,* the presence of which can be proved by a postmortem examination.

No evidence was offered that in any way tries to explain what Dr. Mannaheimer was talking about when he said, "or other factors supplying the brain." Dr. Capers, the man who did the autopsy on Gibson, stated that Gibson had no cardiac arteriosclerosis or any circulatory disease. That witness nor any other witness attempted to negative the existence of *"other factors supplying the brain"* as referred to by Dr. Mannaheimer as being a possible cause of Gibson's brain damage and death.

This leaves the plaintiffs' evidence as showing that the claimed negligent act of the doctor (in applying external heart massage in an improper manner) was no more than a possible cause of Gibson's brain damage and death, because plaintiffs' own evidence showed that there were other possible causes, the existence of which was in no way negatived by the evidence, that could possibly have caused Gibson's brain damage and death also.

When a plaintiff in a medical malpractice case rests with his evidence in this State an instructed verdict is proper. Bowles v. Bourdon, supra; Lenger v. Physician's General Hospital, Inc., supra; and Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup., 1966).

It follows from what we have said that the erroneous exclusion of the two items of evidence as demonstrated above was harmless error. Even if such items of evidence had been admitted the trial court would have been compelled to instruct a verdict anyway.

By point 4 appellants contend that the trial court erred in not letting Mrs. Gibson testify as to transactions with her deceased husband.

The suit was brought by Mrs. Gibson, individually and as community survivor and/or administrator of the estate of Bobby Ray Gibson and as guardian of

the estates of minors, Rhonda Lynn and Jana Kaye Gibson.

She offered to testify as to transactions with the deceased and the trial court sustained the objection.

 We think this ruling was correct because of Art. 3716, Vernon's Ann.Tex. Civ.St. The trial court was required to make his ruling on the state of the record and based on who the parties were, what they were trying to recover for, and in what capacities they were suing as of the time he made his ruling. As of the time the trial court passed on this question his ruling was correct. Plaintiffs' attempt to barter with the trial court did not change the situation because they never did do what they offered to do and thus place the court in the position of having to rule on the admissibility of such evidence under this changed state of the record.

It is obvious also that even if the trial court had erred in this respect it would be harmless error because none of Mrs. Gibson's excluded testimony would change the situation on the proximate cause question referred to above.

The entire judgment is affirmed.