**Robert A. KIESWETTER, Appellant,**

v.

**CENTER PAVILION HOSPITAL,**
**Appellee.**

**No. 01-82-0396-CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 1983.

**26**

Charles L. Houssiere, III, Houston, for appellant.

Michael W. Hogue, Jay D. Hirsch, Houston, for appellee.

Before SMITH, DUGGAN and LEVY, JJ.

## OPINION

DUGGAN, Justice.

Appellant, a surgery patient, sued the appellee hospital, alleging medical malpractice resulting in the loss of his eye. He appeals from a directed verdict in favor of the hospital.

Appellant, Robert A. Kieswetter, was admitted to Center Pavilion Hospital in Houston, Texas, in June of 1973 for cataract surgery on one eye. The operation went well without incident. Following the surgery, however, appellant began to experience complications, and his eye swelled up and was all red "like an orange." His treating physician feared that infection was a cause of the inflammation, and antibiotic treatment was immediately administered. About two weeks after the cataract removal, his physician was obliged to perform further surgery to remove the internal contents of the eye, both because of its inflamed condition and because appellant no longer had any light perception from the eye. As a result, appellant lost the sight of his eye.

Appellant brought suit against Dr. Louis Girard, his physician; Dr. Rowland S. Hawkins, the physician who assisted Dr. Girard in the surgery; and the appellee hospital. After appellant's evidence was presented, he took a voluntary non-suit against the two doctors. Upon the hospital's motion, the court then instructed the jury to return a verdict in favor of the defendant hospital.

As a basis for its motion for directed verdict, appellee Center Pavilion Hospital argued that while plaintiff proved that he had undergone surgery in the hospital and that subsequently the internal contents of his eye had to be removed, he (1) failed to offer any evidence that the hospital, through its nurses or employees, breached any duty by act or omission, and (2) failed to show proximate causation between any alleged negligence and resulting injury. The granting of the appellee hospital's motion for instructed verdict is the sole error alleged on appeal.

In reviewing the propriety of granting an instructed verdict, the reviewing court must consider the evidence in the light most favorable to appellant, disregarding all conflicts and indulging every reasonable inference favorable to appellant. *Elizondo v. Tavarez,* 596 S.W.2d 667 (Tex. Civ.App.—Corpus Christi 1980, ref'd n.r.e.); *Gibson v. Avery,* 463 S.W.2d 277, 282 (Tex. Civ.App.—Fort Worth 1970, no writ). When reasonable minds may differ as to the truth of controlling facts, an issue is presented for the trier of fact. *Elizondo.*

However, an instructed verdict should be granted when reasonable minds can draw only one inference from the evidence. *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978).

The record reflects that the appellant was permitted to testify, without objection, that he had no infection whatsoever in his eye before the surgery, that when it became swollen and red after surgery he "knew it was a bad infection," that he was told by Dr. Girard that his eye was infected, and that if the membrane in his eye erupted, the infection would go to his brain and it would kill him. A week after the cataract operation he was told he would have to go to the operating room again to get a culture to try to prescribe proper medication for his eye; they were going to do it in the Center Pavilion Hospital so they could get a reading on the infection faster. A second culture was taken about a week after that, and a third some ten days later. Two other physicians called in by Dr. Girard to help in the diagnosis indicated to him that he had an infection. "Besides losing my eye," appellant testified, "I was worried about my life."

The appellant also described the Center Pavilion Hospital as being an apartment building which had been renovated for use as a hospital. The rooms were small, the sheetrock in his bathroom had come loose, and it was "not very clean." He recalled complaining that food trays were being allowed to stack up in his room. He said he asked for and received one bath during his entire stay at the hospital. After his eye surgery, his doctors were "extremely concerned about the cleanliness of anybody that might come in contact" with him, and two pans of disinfectant were placed in his room, so that anyone entering should put their hands in the solution, from one pan to the other. The doctor told him the disease was highly contagious, and that he might contract it in his other eye. He observed nurses going in and out of his room without putting their hands in the disinfectant solutions, and he reported it to the physicians.

This evidence alone will not suffice to warrant submission of the negligence and proximate cause issues because the trial court is barred from giving any weight to this lay testimony. *See* Perdue, *Medical Malpractice—Evidence,* 11 Hous.L.Rev. 602, 612–620 (1974). In a medical malpractice suit these two elements must be proven, as a general rule, by expert medical testimony. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949); *Kaster v. Woodson,* 123 S.W.2d 981 (Tex.Civ.App.—Austin 1938, writ ref'd). "Courts and juries are not supposed to be conversant with what is peculiar with the science and practice of the profession of medicine and surgery." *Kaster* at 983. In fact, "what is an infection and from whence it did come are matters determinable only by medical experts," and without such expert testimony, the court and jury are not qualified to pass upon the question. *Id.* However, in reaching a verdict, the trier of fact is not limited to considering only the expert testimony. See *Lenger v. Physicians General Hospital, Inc.,* 455 S.W.2d 703, 706 (Tex.1970); *Bormaster v. Henderson,* 624 S.W.2d 655, 659 (Tex.App.—Houston [14th Dist.] 1981, no writ). Expert witnesses appear in a trial to assist in the decision-making process, not to control it. *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1289 (5th Cir.1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688.

The statement of facts contains the following testimony by Dr. Girard, the opthalmologic surgeon called by the appellant as an adverse witness: The appellant had no infection prior to surgery. Two days after surgery, Dr. Girard noticed *signs of inflammation* of the eye. His first impression was that it was not due to an infection, and a culture was taken which revealed no infection; nevertheless, Dr. Girard prescribed antibiotics. Although a second culture eight days after the original surgery did show bacterial evidence of infection, and although Dr. Girard noticed that there was pus in the eye, a third culture came back negative. Dr. Girard agreed that the time period between the first signs of inflammation and the second, or positive, culture was about the normal time period for development of bacteria in a wound site to the

point where it would produce observable signs. He also agreed that bacteria which produces an infection will also cause an inflammation. He testified that he was "not absolutely sure" that the eye was infected but did recall saying during his deposition that the condition was more than likely an infection.

The physician further testified that, since the middle of the nineteenth century, sterilization of instruments used in surgical procedures has been the standard practice. He described in detail the scrubbing and donning of sterile caps, gowns, masks, and gloves which is customary before ophthalmologic surgery and which he and his assistants did before performing cataract surgery on the appellant. He also outlined the procedures used to try to maintain an "aseptic field" around the eye during the surgery, including use of disinfectant on the skin near the eye and sterile draping.

Dr. Girard further testified that nothing had touched the appellant's eye except materials provided by the hospital. He was asked to assume that no infection was present before the surgery, that symptoms of inflammation were found shortly after surgery, that there was indeed an infection, and that he was not present when any claimed sterilization of instruments occurred. Assuming the truth of these statements, he was asked his opinion as to the most likely cause of infection. Dr. Girard answered, "You would have to assume that the bacteria were—invaded the eye at the time of the surgery." He was then asked whether, assuming the bacteria invaded the eye during the operation, and assuming there was an infection, he had an opinion as to what introduced that infection:

A. It would have to get into the eye from several different sources. One, it could come from the air. Two, it could come from the patient himself. He could be harboring the bacteria. Three, it could be introduced by instruments, and, four, it could be introduced by the irrigating solutions that go into the eye.

Q. All right. In the case of the instruments and the irrigating solutions, those two were both provided, I take it, not by you. Correct?

A. Correct.

Q. They were provided by the hospital?

A. Correct.

· · · · ·

Q. Assuming that Mr. Kieswetter did not have an infection from his body, and assuming the hospital provided you with these instruments, do you have an opinion as to what the most likely cause of the introduction of this infection was?

· · · · ·

A. Assuming that there was an infection, I would have to say that the most likely method of introducing the bacteria would be somehow through the irrigating solutions.

On cross-examination by the hospital's counsel, Dr. Girard was again asked whether, if he were to try and conclude the most likely source of the infection or inflammation in appellant's eye, he would say it came from the solutions. His reply was "That's correct."

The appellee insists that the directed verdict in its favor was proper because the appellant rested his allegations entirely upon inferences rather than upon direct evidence, thus inviting the jury to speculate as to whether the appellant had an infection and whether its source was the result of any breach of duty by appellee. Appellee cites the landmark decision of *Bowles v. Bourdon, supra,* wherein the court stated:

When the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause injury.

The hospital also observes close parallels between the case at bar and *Kaster v. Woodson, supra,* wherein the appearance of infection in the appellant's arm three or four days after a hypodermic needle was

injected was held not sufficient as proof that either the physician or his nurse was negligent in failing to sterilize the needle or skin of appellant's arm before the injection. Noting that infection comes from many sources, the court held that there must be affirmative proof of such negligence or lack of care, and that the injuries complained of resulted therefrom. The appellate court in *Kaster* affirmed the trial court's instructed verdict for the physicians because there was no medical testimony as to the probable cause of the infection or its source.

The appellee hospital here points out that neither Dr. Girard nor Dr. Hawkins was willing to go on the record at trial to state unequivocally that an infection was present, that neither testified that hospital equipment had not been sterilized or that the sterilization procedure used by the hospital had fallen beneath the standard set out for such a procedure in other similarly-situated medical facilities in the county, and that the only testimony of a connection between the alleged infection and its soruce was Dr. Girard's answer to a hypothetical question which showed at least four possible causes. Thus, claims the hospital, this court can only conclude there is no evidence to support the contention that the hospital provided a contaminated instrumentality involved in the surgical procedure on Mr. Kieswetter.

We disagree. Dr. Girard's expert testimony is evidence of probative force sufficient to support submission of the ultimate issues to the trier of fact.

▇▇▇ The plaintiff in a medical malpractice case may prove his cause of action by circumstantial evidence, *Sears v. Cooper,* 574 S.W.2d 612, 615 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.), and he is not required to prove legal causation in terms of medical certainty, *King v. Flamm,* 442 S.W.2d 679, 682 (Tex.1969); *see Hoffman v. Houston Clinic,* 41 S.W.2d 134, 138 (Tex.Civ.App.—Galveston 1931, writ dism'd), but only in terms of medical likelihood or probability, *see Lenger, supra,* at 706. If the plaintiff is relying upon circumstantial evidence to supply a fact issue on negligence then the record must show that negligence, by inference, is somehow present in terms of the more reasonable probability. *Louis v. Parchman* 493 S.W.2d 310, 318 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). The plaintiff must also show at least a reasonable probability that his complications were *caused* by such negligence, *Parker v. Employers Mutual Liability Ins. Co. of Wisconsin,* 440 S.W.2d 43, 46 (Tex.1969); *Gibson v. Avery, supra,* at 280.

The *Bowles* opinion did not say that inferences could be made only from direct evidence. The Court simply stated that "if the plaintiff would rest upon inferences rather than upon direct evidence," the same rule applies, i.e., proof must establish a "causal connection beyond the point of conjecture." *Id.* 219 S.W.2d at 785. In *Kaster v. Woodson,* no expert medical testimony was offered to show that there was any act done or omitted to be done by the defendants which caused the injury. The reviewing court in *Elizondo v. Tavarez, supra,* also cited by the appellee, reached a similar conclusion.

▇▇▇ In the instant case Dr. Girard's acknowledgement at trial of his deposition statement that the appellant's eye condition, which led to his loss of sight, was "more likely" an infection constitutes some probative evidence that it was. Also, Dr. Girard admitted that pus was noted in the eye and that one of the three cultures showed an infection to be present (direct evidence of an infection). This is all in addition to Dr. Girard's admission to the appellant when he was in the hospital that his eye was indeed infected. That two of the three cultures came back with negative results as to infection, and that the physician, called as an adverse witness by the plaintiff, was unable or unwilling to state with absolute certainty at trial that infection was present do not mean that the jury was not entitled to draw an inference of infection based on his testimony. Reasonable probability is determined by a consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase. *Insurance*

*Company of North America v. Myers,* 411 S.W.2d 710, 713 (Tex.1966).

Affirmative proof of the source of appellant's eye condition was established by Dr. Girard's testimony that, of the four possible sources of the bacteria which brought about the complication, the most likely was the irrigating solutions provided by the hospital. This opinion was given in answer to a hypothetical question based upon a combination of facts in evidence and facts reasonably drawn therefrom. *Burns v. Bridge Engineering Corp.,* 465 S.W.2d 427, 432 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). In addition, that same probable cause was confirmed by Dr. Girard during the hospital's cross-examination of him as an opinion apparently based on personal knowledge and experience. This conclusion, reached by a process of elimination and based on expert knowledge, is circumstantial proof from which a jury could infer that the proximate cause of the problem was the use of unsterile solutions provided by appellee.

■ A hospital's duty to provide proper and safe materials for the treatment of ailments is proven as a matter of law where, as here, a patient-hospital relationship is established. *See Overton Memorial Hospital v. McGuire,* 518 S.W.2d 528, 529 (Tex.1975); *McEachern v. Glenview Hospital,* 505 S.W.2d 386, 392 (Tex.Civ.App.— Fort Worth 1974, no writ). Further evidence of the appellee's duty to provide sterile instruments and irrigating solutions is found in Dr. Girard's testimony that sterilization has been standard medical practice for over the last century and a half.

Additionally, the evidence as a whole, i.e., the appellant's personal testimony regarding generally unsanitary conditions and procedures at the hospital, supports the conclusion that Dr. Girard's opinion on causation was based on reasonable medical probability. *See Maedgen v. Kolodny,* 384 S.W.2d 410, 415 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.).

■ Disregarding all evidence and inferences to the contrary, a jury would be entitled to infer from this testimony that the plaintiff contracted the eye infection because of the hospital's negligence in failing to use properly sterilized irrigating solutions. Since the evidence clearly raised issues as to whether the hospital was guilty of negligence in its care of the appellant and whether such negligence, if any, was a proximate cause of the loss by appellant of his eyesight, the trial court erroneously instructed the verdict for appellee.

The appellee contends that germane to a fair review of the entire record here is the decision of the San Antonio Court of Civil Appeals in *Mullins v. Bexar County Hospital District,* 535 S.W.2d 44 (Tex.Civ.App.— San Antonio 1976, writ ref'd n.r.e.). In that case a jury found that the defendant hospital's negligence in failing to provide uncontaminated intravenous instruments was the proximate cause of the plaintiff's arm infection (infectious thrombophlebitis caused by a staphylococcus). The only testimony concerning the possible source of the infection was the treating physician's answer to a hypothetical question. He was asked whether, based upon a reasonable degree of medical certainty, the IV or the blood that was administered through infusion through the IV "was or could have been contaminated and probably caused the thrombophlebitis condition." The witness answered, "I think that's a probable cause, yes." *Id.* at 45. The court observed that the expert testimony showed at best that the infection was probably caused by the contamination of the IV apparatus *or* by the contamination of the blood which was being injected into the plaintiff. Under such circumstances, said the court, citing *Bowles, supra,* the jury could do no more than guess or speculate as to which was, in fact, the cause of the infection, and it was improper to permit the jury to make the choice. *Id.* at 46.

To show an analogy between that case and this, appellee points to testimony by Dr. Girard that appellant's condition could have been inflammation, could have been a reaction to the operation, or could have been infection. It also notes that Dr. Girard mentioned four possible sources of contamination and that Dr. Hawkins, the other

treating physician, could only guess that the contamination came from a solution but said that it could have come from the instruments or suture material.

The Texas Supreme Court has stated that reasonable medical certainty is not proved when there is proof of two possible causes, one the result of negligence and one not. *Webb v. Jorns,* 488 S.W.2d 407, 411 (Tex.1972). Where an expert testifies, on the other hand, that in reasonable medical probability the defendant was the author of two causes, either of which could have caused the injury, it is not error to submit the issue to the jury. *Id.* The *Mullins* opinion does not seem representative of the established law of medical malpractice in Texas. In any event, it is inapplicable to this case in view of the previously described expert testimony by which the appellant introduced evidence of one *probable* source of infection.

The trial court erred in directing a verdict for the appellee. Appellant's point of error is sustained.

The judgment is reversed and the cause is remanded for a new trial.