# NO. 12-17-00206-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TONIKA CHATMAN,* *APPELLANT* | *§* | *APPEAL FROM THE 145TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *SIDNEY FOWLER, DDS AND* *DIAGNOSTIC DENTAL,* *APPELLEES* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

## *OPINION*

Tonika Chatman appeals from the trial court's order granting both traditional and no evidence summary judgment in favor of Sidney Fowler, DDS and Diagnostic Dental (Dr. Fowler). In two issues, Chatman argues the trial court erred because Dr. Fowler failed to meet his burden to show that no genuine issues of material fact exist and because Chatman presented sufficient evidence of causation to support her medical malpractice claim against Dr. Fowler. We affirm.

## BACKGROUND

On April 1, 2014, Chatman presented to Dr. Fowler, a dentist, complaining of pain in her lower right wisdom tooth, pain in her lower and upper jaw, pain in her ear, and difficulty swallowing. Chatman filled out a check box medical history indicating she suffered from high blood pressure, allergies to "penicillin/sulfa drugs," pain or discomfort in her mouth, and that she had a family history of diabetes.[1] Dr. Fowler performed an x-ray and took Chatman's vital signs. He diagnosed Chatman with severe tooth decay and slight swelling of the periodontal membrane

---

[1] The document listed a variety of ailments under a heading that stated "do you have or have you ever had any of the following," and then listed a "yes" or "no" box next to the specific ailment for the patient to select. The document also asked about family history of diabetes, heart disease, and bleeding disorders. The document further asked whether the patient had "any current conditions that haven't been mentioned" and provided lines for the patient to fill in. Chatman wrote "no."

and pulpitis of the tooth. After obtaining consent from Chatman, Dr. Fowler extracted the painful tooth. Dr. Fowler did not prescribe any medication, but instructed Chatman to take ibuprofen as needed for pain.

Two days later, Chatman presented to Fowler's office complaining of extreme jaw pain, increased swelling, earaches, and difficulty opening her mouth. Fowler's office prescribed antibiotics for these symptoms. Chatman returned to Fowler's office the next day because her symptoms had not subsided. Dr. Fowler's dental assistant examined Chatman, and noted that Chatman's mouth was swollen and difficult to access. Dr. Fowler prescribed an antibacterial rinse, pain medication, and an increased dosage of antibiotics.

That evening, Chatman's symptoms caused her to go to the emergency room where she received an injection for pain. Chatman continued to have pain and swelling over the weekend and began to experience shortness of breath and difficulty breathing. On Saturday April 5, Dr. Fowler prescribed Chatman a different antibiotic. The following Monday, Chatman presented to Dr. Fowler's office in severe pain. After consulting Dr. Fowler by phone, his staff recommended Chatman go to the emergency room. Dr. Fowler arrived at the emergency room and performed surgery on Chatman, removing part of her jaw bone. Chatman was left with a scar and facial deformity, for which she later underwent plastic surgery.

On April 5, 2016, Chatman brought a healthcare liability claim for damages against Dr. Fowler. Chatman designated Dr. James Bates, an oral and maxillofacial surgeon, as her expert witness and served Dr. Fowler with his report. Dr. Bates stated in his report that it was possible Chatman already had an infection when she presented to Dr. Fowler on April 1, and if she had an infection, antibiotics should have been administered to her preoperatively or, at the very least, postoperatively. Dr. Bates further stated that even with prophylactic antibiotics, patients can still develop serious infections, and the administration of antibiotics to Chatman may not have prevented the serious sequela.[2] On April 25, 2017, Dr. Bates gave a deposition and testified that he believed Chatman had an infection when she presented on April 1, and should have received preoperative antibiotics. However, Dr. Bates admitted that he could not say within a reasonable degree of medical probability that the administration of antibiotics would have prevented or reduced the severity of her infection or eliminated the need for her subsequent hospitalization and surgery.

---

[2] In the medical field, "sequela" is defined as a pathological condition resulting from a disease. THE AMERICAN HERITAGE STEDMAN'S MEDICAL DICTIONARY 754 (1995).

Dr. Fowler moved for summary judgment on no evidence and traditional summary judgment grounds and argued to the trial court that (1) after an adequate time for discovery, Chatman failed to present any admissible evidence to support the causation element of her claim, and alternatively that (2) Chatman was unable to meet her burden of proof because Dr. Bates' testimony was insufficient to prove causation. In support of his motion, Dr. Fowler attached Dr. Bates' deposition and Chatman's second amended petition.

Thereafter, Chatman sought leave from the court to file amended pleadings, and subsequently filed a third and fourth amended petition, as well as a response to Dr. Fowler's summary judgment motion. In her response, Chatman argued that Dr. Fowler "failed to treat Plaintiff preoperatively and post-operatively with antibiotics as well as failed to irrigate and curette the extraction site which led to her hospitalization and further debilitation post tooth extraction…Dr. Fowler was negligent in his treatment of Plaintiff which either (1) caused the injury she complains of or (2) exacerbated her condition." Chatman attached deposition testimony from Dr. Bates, Dr. Fowler, and Dr. Nathaniel Tippit, Dr. Fowler's retained expert, as well as a copy of her fourth amended petition, her medical intake form from Dr. Fowler's records, and Dr. Bates' medical expert report.

The trial court granted Fowler's motion, and this appeal followed.

## NO EVIDENCE SUMMARY JUDGMENT

In two issues, Chatman argues that the trial court erred in granting Dr. Fowler's no evidence and traditional summary judgment motion. Chatman argues that the evidence she submitted to the trial court in response to Dr. Fowler's motion was sufficient to create a fact issue regarding causation. Dr. Fowler responds that Chatman presented no evidence to create a genuine issue of material fact and is merely reciting the conclusory allegations set forth in her petition. Further, Dr. Fowler argues that the determination of causation in this case is not within the purview of the fact-finder, and requires expert testimony.

**Standard of Review and Applicable Law**

After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that the non-movant lacks supporting evidence for one or more essential elements of its claim. TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed, the burden shifts to the non-movant to present more than a scintilla of probative

3

evidence to raise a genuine issue of material fact supporting each element challenged in the motion. *Id.*; *Timpe Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

A no evidence summary judgment motion is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* at 751. The trial court must grant the motion if the non-movant fails to produce summary judgment evidence that raises a genuine issue of material fact on the elements of its claim that the movant has challenged. *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 824 (Tex. App.—San Antonio 2012, no pet.).

When a motion asserts both no-evidence and traditional grounds for summary judgment, we first review the no-evidence grounds. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). If the non-movant fails to produce more than a scintilla of evidence on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment. *Id.* at 680-81.

**Proximate Cause**

To prevail on a healthcare liability claim, the plaintiff must prove that (1) the defendant owed her a duty to act according to an applicable standard of care, (2) the defendant breached the applicable standard of care, (3) she suffered an injury, and (4) within a reasonable medical probability, the defendant's breach proximately caused her injury. *Tejada v. Gernale*, 363 S.W.3d 699, 708 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Proximate cause has two components: causation in fact and foreseeability. *W. Invs. Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The ultimate standard of proof on causation is "whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the [injury] and without which the harm would not have occurred." *Park Place Hosp. v. Estate of*

*Milo*, 909 S.W.2d 508, 511 (Tex. 1995). With regard to cause-in-fact, the plaintiff must establish a causal connection between the defendant's negligence and the injuries based upon "a reasonable medical probability" and not mere conjecture, speculation, or possibility. ***Gray v. Woodville Health Care Ctr.***, 225 S.W.3d 613, 617 (Tex. App.—El Paso 2006, pet. denied).

In medical malpractice cases, the general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. ***Jelinek v. Casas***, 328 S.W.3d 526, 533 (Tex. 2010). The supreme court has held that a patient has no cause of action against his doctor for malpractice, in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the plaintiff's injuries. ***Id.*** Texas has allowed lay evidence to establish causation in cases in which the general experience and common sense will enable laymen to determine, with reasonable probability, the causal relationship between the event and the condition. ***Id.***

**Analysis**

We begin our analysis by addressing Chatman's second issue, which challenges the granting of Dr. Fowler's no evidence summary judgment motion. *See **Hansen***, 525 S.W.3d at 680. Under the no evidence standard, after Dr. Fowler moved for summary judgment on no evidence grounds, the burden shifted to Chatman to produce more than a scintilla of probative evidence to raise a genuine issue of material fact supporting causation. *See* Tex. R. Civ. P. 166a(i); ***Gish***, 286 S.W.3d at 310. In maintaining that she satisfied her burden, Chatman argues that Dr. Fowler misconstrued Dr. Bates' testimony because the deposition questions assume that Chatman did not have an infection when she presented to Fowler initially. We disagree.

During Dr. Bates' deposition, the following exchange occurred:

> Q. Doctor, let me ask you if you agree with this statement: The standard of care on use of prophylactic antibiotics prior to extraction of teeth is clear. Without evidence of an existing infection, antibiotics are not required. Do you agree with that?
>
> A. I do.
>
> Q. Even with antibiotic prophylaxis, patients can develop serious postoperative infections. Do you agree with that?
>
> A. I do.

Q. And the administration of antibiotics in this case may not have prevented the serious sequela?

A. I do.

Q. And for our folks on the jury, sequela means the consequences, right?

A. Yes.

Q. Prescribing antibiotics may have prevented, or at lease reduced, the severity of her postoperative infection. Do you agree with that?

A. I do.

Q. Can you state within reasonable probability that it would have prevented that infection?

A. No.

Q. And can you state within reasonable probability that it would have reduced the severity?

A. I cannot state that.

Q. Okay. And, again, likewise, you cannot say within reasonable probability that it would have eliminated the need for the hospitalization and the surgery; is that fair?

A. Yes.

Dr. Bates' unequivocally stated that he was unable to say within reasonable probability whether prescribing antibiotics to Chatman would have prevented or reduced the severity of her infection, or eliminated the need for her hospitalization or surgery. At oral argument, Chatman conceded that Dr. Bates' testimony was insufficient to raise a fact issue regarding causation.

Nevertheless, Chatman argues in her brief that she met her burden through a combination of the various experts' testimony and the common knowledge of a layperson. Specifically, she argues that

> Dr. Bates stated that Chatman had an infection when she first presented to Fowler…Dr. Tippit testified that an infection can "arguably" seep into a jaw bone…[Dr. Tippit] also testified that "standard extractions are curetted and irrigated"…[Fowler] failed to curette and irrigate Chatman's extraction site…because the site was not flushed out after extraction, any residual infection remained. [C]hatman's infection seeped into her jaw bone causing bone loss. [B]ecause of Fowler's acts or omissions, Chatman suffered severe damage to her jaw bone and permanent facial deformity…[F]owler testified that Chatman presented with symptoms of an infection…[F]owler further testified that an infection of a deeply decayed tooth could seep out of the pulp chamber in the middle of the tooth and sit on the jaw line. [F]owler's own testimony presents a genuine issue of material fact as to the causal connection between his acts or omissions and Chatman's injuries...also, a layperson knows that an untreated infection will worsen and cause additional injury and damage.

6

In support of her argument that a layperson can determine causation under these facts, Chatman cites *Kieswetter v. Ctr. Pavilion Hosp.*, 662 S.W.2d 24 (Tex. App.—Houston [1st Dist.] 1983, no writ). In *Kieswetter*, the plaintiff sued the hospital after he developed a post-operative infection following cataract surgery. *Id.* at 26. The plaintiff did not present expert testimony, but relied on testimony from the adverse witness surgeon and his own testimony regarding the unsanitary conditions, to support his claim that unsterile solution provided by the hospital had caused his infection and loss of eyesight. *Id.* at 29–30. Chatman argues that in *Kieswetter*, the "experts presented indefinite testimony about the infection and the possible causes…the expert merely hypothesized about other possible causes…the court held that plaintiff's testimony coupled with the expert's testimony showed causation was based on a reasonable medical probability and sufficiently raised an issue to be determined by the jury." However, in *Kieswetter*, the surgeon admitted that the plaintiff did not have an infection prior to the surgery. *Id*. at 27. While the surgeon would not unequivocally state the plaintiff suffered a subsequent infection, he acknowledged such in his deposition testimony wherein he stated the plaintiff likely had an infection. *Id*. at 27–28. The surgeon further testified, in the form of a hypothetical based on facts in evidence and facts reasonably drawn therefrom, that the most likely source of the bacteria was the solution supplied by the hospital. *Id.* at 30. The court held that "affirmative proof of the source of appellant's eye condition was established by Dr. Girard's testimony that, of the four possible sources of the bacteria which brought about the complication, the most likely was the irrigating solutions provided by the hospital." *Id.*

We are not persuaded that *Kieswetter* supports Chatman's argument because, in this case, there is no testimony that any act or omission of Dr. Fowler likely caused Chatman's injuries. Chatman relies on the testimony of Dr. Bates and Dr. Fowler to establish that she had an infection when she presented to Dr. Fowler on April 1. Chatman further argues that Dr. Tippit's testimony and Dr. Fowler's testimony established that Dr. Fowler did not curette or irrigate the extraction site. Viewing the evidence in the light most favorable to Chatman, she failed to provide any proof that an act or omission on behalf of Dr. Fowler, i.e., failing to curette and irrigate the extraction site, was a substantial factor in bringing about her subsequent injury. *See Park Place Hosp.*, 909 S.W.2d at 511. Dr. Tippit merely testified that curetting and irrigating an extraction site was the standard of care; he did not opine that the failure to curette and irrigate would have caused or

7

prevented Chatman's subsequent severe post-operative infection or subsequent need for hospitalization and surgery.

The determination of negligence and resultant injuries in the context of prevention and treatment of an infection is clearly not within the purview of a lay person's knowledge. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (holding expert testimony required to prove hospital's alleged negligence through lapse in antibiotic medication caused terminal cancer patient's additional pain and suffering); *see also Kaster v. Woodson*, 123 S.W.2d 981, 983 (Tex. Civ. App.—Austin 1938, writ ref'd) ("[W]hat is an infection and from whence did it come are matters determinable only by medical experts."); *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1965) ("in determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony…there can be no other guide, and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."). Chatman's statement that Dr. Fowler's failure to curette and irrigate the site caused severe damage to her jaw bone and permanent facial deformity is wholly conclusory and unsupported by any medical expert testimony.

Because Chatman failed to provide any evidence that Dr. Fowler's actions or omissions caused or exacerbated her injuries, we conclude that she did not meet her burden to produce more than a scintilla of evidence creating a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310; *see also Jelinek*, 328 S.W.3d at 533; *Woodville Health Care Ctr*., 225 S.W.3d at 617. Thus, the trial court did not err in granting Dr. Fowler's no evidence motion for summary judgment. Because we so conclude, we overrule issue two and need not address issue one regarding Dr. Fowler's traditional summary judgment motion. *See Hansen*, 525 S.W.3d at 680-81.

## CONCLUSION

Having overruled Chatman's second issue, the judgment of the trial court is *affirmed*.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00206-CV**

**TONIKA CHATMAN,**
Appellant
V.
**SIDNEY FOWLER, DDS AND DIAGNOSTIC DENTAL,**
Appellees

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1631963)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **TONIKA CHATMAN,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*