Armando ELIZONDO, Sr., Appellant,

v.

Vicente TAVAREZ, Jr. et al., Appellees.

No. 1448.

Court of Civil Appeals of Texas,
Corpus Christi.

March 13, 1980.

Rehearing Denied April 10, 1980.

John Gano, Houston, for appellant.

Gary Gurwitz, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, John E. Lewis, Jones & Lewis, McAllen, for appellees.

## OPINION

BISSETT, Justice.

This is an appeal from the granting of an instructed verdict and the rendition of a take nothing judgment in a medical malpractice case. Armando Elizondo, Sr., [Elizondo] was plaintiff and Vicente Tavarez [the doctor], and the City of McAllen, owner and operator of McAllen General Hospital [the hospital] were defendants in the trial court. The doctor and the hospital each filed a motion for an instructed verdict after Elizondo rested, but before either of them put on any evidence. Both motions were granted, and a take nothing judgment was rendered. Elizondo has appealed.

On May 6, 1973, Elizondo was admitted to the hospital for abdominal surgery by the doctor to remove his gallbladder. Surgery was performed the next day, and Elizondo remained in the hospital to recover from the operation. On May 8, 1973, Elizondo began to suffer from abdominal distension caused by the collection of gas. This distension caused pressure on the freshly su-

tured surgical wound. The next day his condition worsened, and the doctor ordered the insertion of a Levin [1] tube to relieve the distension.

The order for insertion of the tube was left by the doctor at the nursing station on the surgical floor at about 9:00 p. m. on May 9, 1973. Approximately forty-five minutes later, Nurse Maria Aparicio, a graduate but unregistered nurse working the 3–11 o'clock shift on the surgical floor, asked her supervising nurse for permission to insert the tube into Elizondo's abdominal area. Permission was granted, and Nurse Aparicio began the implementation of the doctor's order. Initially, she was joined by her supervising nurse in Elizondo's room. The supervising nurse, however, left the room while Nurse Aparicio attempted to insert the tube. During this attempt, Elizondo began to gag. Eventually, he eviscerated; the abdominal sutures ripped apart, which caused his intestines to become exposed and dislodged. Shortly thereafter, the doctor arrived, and an emergency operation was performed to replace Elizondo's intestines and close the surgical incision.

Elizondo seeks damages for personal injuries sustained because of the alleged negligence of the doctor and of Nurse Aparicio, a general employee of the hospital, relating to certain acts and omissions concerning the attempt to insert the tube through his nostril down his throat into his abdominal cavity. He does not sue for damages resulting from the gallbladder operation.

Elizondo first contends that it was an abuse of discretion for the trial court to deny his motion for continuance based upon the unavailability of a material witness, Nurse Aparicio. Discussion of this point requires a brief review of the procedural history.

On April 1, 1974, Elizondo filed suit against the doctor for negligence relating to insertion of the tube. On September 14, 1974, he deposed Nurse Aparicio. At the time of her deposition, Nurse Aparicio resided in Hidalgo County, the county of suit.

She indicated in her deposition that she would be available to testify at the trial of plaintiff's lawsuit. Then, on September 23, 1974, Elizondo brought the hospital into the suit as defendant.

The first trial setting was February 2, 1976. Elizondo's counsel said that he checked periodically upon Nurse Aparicio's whereabouts, and never had reason to believe she was living anywhere other than Hidalgo County, or that she would be unavailable for trial. Nevertheless, it is undisputed that on August 31, 1976, a subpoena for Nurse Aparicio was returned unserved because she could not be located in Hidalgo County. The trial date was then moved to sometime in December of 1977, pursuant to a motion for continuance filed by one of the defendants. Sometime in late 1977 or early 1978, Nurse Aparicio moved out of Hidalgo County. A third setting for a trial for February 24, 1978, was postponed. Finally, on March 30, 1978, at a docket control conference, which was attended by counsel for Elizondo, the case was set for a jury trial on September 5, 1978, and the deadline for discovery was fixed at August 18, 1978.

It was not until late in August, 1978, however, that Elizondo's counsel attempted to contact Nurse Aparicio. On September 1, 1978, Nurse Aparicio was successfully contacted by Elizondo's attorney. She refused to voluntarily appear at the trial as a witness. The motion for continuance was filed at 8:12 a. m. on September 5, 1978.

Counsel for Elizondo alleged and testified that the testimony of Nurse Aparicio "relative to what she did and how she performed on such occasion is material and is absolutely crucial to a trial of plaintiff's case" since "this testimony cannot be elicited from any other source." He further alleged that because the hospital was not a party to the suit when Nurse Aparicio's deposition was taken, it could not be used against the hospital at the trial, unless the hospital agreed thereto, which it "has not so agreed." He also alleged and testified that

---

1. This tube is passed through a patient's nostril down his throat and into his abdominal area in order to remove, by suction, excess gas from the area.

the nurse refused to appear "to testify in the trial scheduled in this case during the week of September 5, 1978"; that she "now resides beyond the subpoena range of this Court"; and that justice requires that the case be continued in order that he may take her deposition "which cannot now be done under the Rules in time for this trial setting." He further alleged and testified that Nurse Aparicio, when her deposition was taken in 1974, "represented that if she was needed to come to court at the time of trial, she would do so, and plaintiff relied on that representation." The motion for continuance was denied and the cause proceeded to trial before a jury.

■ The law is well settled that the trial court's denial of a motion for a continuance is within the sound discretion of the trial court and it will be presumed, absent a showing of an abuse of discretion, that the court properly exercised its discretion. *Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex.Sup.1963); *Southwestern Bell Telephone Co. v. Griffith*, 575 S.W.2d 92 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). It is not an abuse of discretion to deny a first motion for continuance based upon the absence of a material witness where there is no showing of proper diligence to procure the testimony of the witness. *Fritsch v. J. M. English Truck Line*, 151 Tex. 168, 246 S.W.2d 856 (1952).

■ In the case at bar, plaintiff's counsel knew about the September 5, 1978, trial setting for six months prior to the setting. Nevertheless, he made no attempt to contact Nurse Aparicio about testifying at trial until late August, 1978, apparently about two weeks before the trial setting. After reviewing the facts of this case, we cannot say that plaintiff was entitled to rely upon Nurse Aparicio's representation, if any, in her deposition that she would be available to testify. Where a party elects to employ other means than those provided by law to assure that a witness appears to testify at trial, it will be at his peril. *Hensley v. Lytle*, 5 Tex. 497 (1851). Elizondo did not show proper diligence in his attempt to locate Nurse Aparicio in time to take her

deposition in the event she refused to testify in person at the trial. We hold, after reviewing all of the facts, circumstances and opportunities shown by the record, that the trial court did not abuse its discretion in denying the motion.

We now address the alleged error of the trial court in ruling that Nurse Aparicio's deposition was not admissible at the trial against the hospital. At the trial, parts of the deposition were admitted along with an instruction that the jury could not consider any of such evidence with respect to the action against the hospital.

■ The general rule is that depositions are inadmissible in evidence against one not a party to the suit at the time the deposition was taken. *Heldt Bros. Trucks v. Silva*, 464 S.W.2d 931 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Allen v. Payne*, 334 S.W.2d 607 (Tex.Civ.App.—Texarkana 1960, writ ref'd n. r. e.); *Dalsheimer v. Morris*, 8 Tex.Civ.App. 268, 28 S.W. 240 (Tex.Civ.App. 1894, no writ); 20 Tex.Jur.2d, Depositions, § 72 (1960). Elizondo recognizes this general rule, but he contends that the hospital waived its right against admission of the deposition against it.

■ Elizondo first argues that the hospital, up to the time of trial, never objected to the admission of the deposition in evidence, or filed a motion to suppress or quash it, as provided in Rule 212, T.R.C.P. That rule, however, only governs objections concerning the form and manner in which the deposition was taken. That is not the case here. Rule 212 is inapplicable to the case at bar.

■ Elizondo next argues that the hospital waived its right against admission of the deposition when, at the hearing on his motion for continuance, it refused to either agree or disagree as to Elizondo's proposed use of the deposition at the trial. At such hearing, the following exchange took place:

MR. GANO [Attorney for Elizondo]:

\* \* \* \* \* \*

". . . I would ask the attorney for the City of McAllen if they agree to the

use of Maria Aparicio Lucio's deposition in this case.

THE COURT: You wouldn't ask him to agree to it if he hadn't had the opportunity to cross examine the witness?

MR. GANO: I am asking him if he would agree to it. If he would, it would no longer be an essential part of this motion.

MR. LEWIS [Attorney for the hospital]: I am not making any agreements or refusing to agree at this time. It hasn't been offered."

If Elizondo's argument is that the hospital in some manner *agreed* to the use of the deposition, such argument is refuted by what was actually said by the attorney for the hospital. If remaining neutral in the face of an invitation to agree somehow constitutes a waiver, as also argued by Elizondo, such argument is without basis or merit. Waiver requires either intentional relinquishment of the right or intentional conduct inconsistent with claiming the right. *Massachusetts Bonding & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396 (Tex. Sup.1967); *Motheral v. Motheral*, 514 S.W.2d 475 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). There was no waiver of any right by the hospital.

■ If Elizondo desired to introduce, by deposition, testimony of Nurse Aparicio in his action against the hospital, it was his burden to re-take her deposition after he made the hospital a party to the suit. He did not meet that burden. The trial court did not err in instructing the jury that it could not consider Nurse Aparicio's deposition testimony as any evidence against the hospital.

■ Elizondo further complains of the trial court's action in sustaining defendants' motions for instructed verdict. In reviewing the propriety of granting an instructed verdict, we must consider the evidence in the light most favorable to plaintiff, disregarding all conflicts and indulging in every reasonable inference favorable to plaintiff. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup.1970); *Bass v. General Motors Corporation*, 491 S.W.2d 941 (Tex. Civ.App.—Corpus Christi 1973, writ ref'd n.

r. e.). When reasonable minds may differ as to the truth of controlling facts, an issue for the trier of fact is presented. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948). An instructed verdict should be granted, though, where reasonable minds can draw only one inference from the evidence. *Collora v. Navarro*, 574 S.W.2d 65 (Tex.Sup.1978).

■ Turning to the case against the doctor, there is no evidence that the doctor was primarily negligent in ordering the insertion of the tube. Although Elizondo alleged primary negligence against the doctor, there is a total absence in the record of any evidence that he personally departed from the standard of care in his school of medical practice, or that the order for the insertion of the tube constituted negligence or was a proximate cause of the injury sustained by Elizondo. The sole issue to be determined in the action against the doctor is whether there is any probative evidence to support vicarious liability on the part of the doctor for the negligence, if any, of Nurse Aparicio in her attempt to insert the tube into Elizondo's abdominal area. Nurse Aparicio was an employee of the hospital at the time of the unfortunate incident. Texas has long recognized that a general employee of one employer may become the borrowed servant of another. *Sparger v. Worley Hospital, Inc.*, 547 S.W.2d 582 (Tex. Sup.1977). Under the borrowed servant doctrine in a suit for malpractice against a doctor, the controlling question is whether the doctor had the right to control the "servant" in the details of the specific act or omission raising the issue of liability. *Miller v. Hood*, 536 S.W.2d 278 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.). The right of control is ordinarily a question of fact.

■ Where an attempt is made to apply the borrowed servant doctrine to the field of medicine in a non-operating room situation, such as is the case here, absent any special circumstances, vicarious liability cannot be imposed upon the attending doctor for negligence in the treatment pre-

scribed by him, but administered by a floor nurse employed by the hospital in the regular course of the services furnished by the hospital. *Miller v. Hood*, supra; *F. B. McIntire Equipment Co. v. Henderson*, 472 S.W.2d 566 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.).

In the case at bar, there is no evidence that the doctor personally ordered Nurse Aparicio to insert the tube. No special circumstances are shown by the record. There is no evidence that Nurse Aparicio, a floor nurse employed by the hospital, was not acting in the regular course of services furnished by her employer when she attempted to implement the doctor's order by inserting the tube. It is conclusively shown by the evidence: 1) that the doctor did not have the right to control Nurse Aparicio at the time in question; and 2) that Nurse Aparicio was not the doctor's borrowed servant. There is no evidence which establishes vicarious liability of the doctor.

Elizondo also asserts that it was error for the trial court to exclude certain testimony of the doctor. Three questions and answers were involved; all concern the issue of borrowed servant, which has been disposed of upon legal grounds in our previous discussion. It is further asserted that it was error for the trial court to exclude 52 questions and answers contained in Nurse Aparicio's deposition. Those questions either relate to the borrowed servant issue or to Nurse Aparicio's alleged primary negligence. All of the questions and answers are immaterial as to the hospital because they are part of Nurse Aparicio's deposition, which we have already held was inadmissible against the hospital. All of the questions and answers are immaterial as to the doctor because: 1) Nurse Aparicio was not his borrowed servant; and 2) her primary negligence, if any, has no effect upon his vicarious liability.

Turning to the alleged error of the trial court in granting an instructed verdict for the hospital, the essential inquiry is whether there is any evidence of vicarious liability of the hospital for the primary negligence, if any, of Nurse Aparicio in her attempted insertion of the tube into Elizondo's nostril, down his throat and into his abdominal cavity. In answering this inquiry we follow the guidelines expressed in *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup.1970), and in *Bass v. General Motors Corporation*, 491 S.W.2d 941 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n. r. e.).

In a medical malpractice case against a hospital because of the acts or omissions of a nurse employed by the hospital, the burden is upon the plaintiff to produce competent evidence of probative value of the relevant practice in the community in which the cause of action arose, and that the nurse deviated from such practice. See *Forney v. Memorial Hospital*, 543 S.W.2d 705 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.); *Butler v. Louisiana State Board of Education*, 331 So.2d 192 (La.Ct. of App.1976, writ ref'd). Elizondo did not meet that burden.

The doctor testified that the proper medical standard of care in his community required a doctor to do everything that is within his means to prevent an evisceration from occurring in a patient with an abdominal surgical wound and abdominal distension. He further testified that one accepted method of relieving abdominal distension because of gas in the abdominal area is the insertion of a Levin tube into that area. Concerning the insertion of the tube, he said that on occasion, chips of ice or water are given to the patient to aid in the passage of the tube from the throat to the abdominal cavity.

The hospital's records indicate that on the night of May 9, 1973: "Levin tube attempted to be inserted, patient gagged and eviscerated." The doctor testified that Elizondo eviscerated because of strain, which he identified as: 1) the strain of distension; and 2) the strain from gagging.

Elizondo testified that he had always been sensitive about gagging when foreign objects were applied to his throat, and that he informed Nurse Aparicio of this when she entered his room to attempt insertion of

the Levin tube. He also asked her to put him to sleep, and told her: "Nobody has ever done it unless they put me to sleep." He requested that she call the doctor, but that she refused to either put him to sleep or call the doctor. Nurse Aparicio then tried to insert the tube. He started gagging. She tried again; he began gagging. After the second attempt, Elizondo said that he felt "something rip." He asked Nurse Aparicio to check and she said: ".No, it is going in." Immediately thereafter, his surgical wound ripped · open and Nurse Aparicio ran out of the room for help.

Elizondo claims that the jury could have concluded from the above evidence that Nurse Aparicio was negligent because: 1) she failed to give him sips of water or pieces of .ice to facilitate the passage of the tube after learning that he was a gagger; 2) she ignored his protests; 3) she ignored his requests to call the doctor and to put him to sleep; and 4) she continued her effort to insert the tube "after he told her he was ripping apart." Elizondo further claims that the jury could have concluded from such evidence that the "negligently attempted insertion was a proximate cause of the evisceration injury."

In the case of *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.Sup.1965), our Supreme Court declared the recognized rule as to the burden a plaintiff must meet in a medical malpractice case, as follows:

> "In determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony. There can be no other guide, and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. . . ."

▮ There was no testimony by a medical expert that the acts and omissions of Nurse Aparicio were negligent acts or omissions which proximately caused the injury upon which this suit is founded. While there is evidence under the facts of this case that the use of a Levin tube is an accepted medical practice in the community in which the alleged cause of action accrued, there is no expert evidence applied to these facts that Nurse Aparicio deviated from such accepted practice. See *Forney v. Memorial Hospital*, supra. Elizondo did not meet his burden of proof under the rule laid down in *Hart v. Van Zandt*, supra.

After considering all of the evidence in the actions against the doctor and the hospital in the light most favorable to Elizondo, and after disregarding all conflicting evidence, and after indulging against the judgment every inference which may be properly drawn from the evidence, we are compelled to hold that the trial court did not err in granting the motions for instructed verdict and in rendering judgment that Elizondo take nothing in his actions against the doctor and the hospital.

We have carefully considered all of Elizondo's points of error. They are overruled.

The judgment of the trial court is AFFIRMED.

YOUNG, J., not participating.