Donald and Rosie
STEVENSON, Appellants,

v.

Ivan KOUTZAROV, Appellee.

No. 01–89–00207–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 23, 1990.

---

Jo Ann Storey, Jacqueline Taylor, Norman Riedmuller, Houston, for appellants.

Lynne Little St. Leger, John F. Nichols, Lynn S. Kuriger, Houston, for appellee.

## ON MOTION FOR REHEARING

O'CONNOR, Justice.

This suit, which arises out of a divorce action, is a suit for damages by a husband against his wife's friends. We reverse and remand. On motions for rehearing, we grant appellants' motion for rehearing on point of error nine, deny the remainder of appellants' motion, deny appellee's motion, withdraw our earlier opinion, and substitute the following:

Ivan Koutzarov (the husband) filed for divorce against Maria Arnaldina Koutzarov (the wife). In an amended petition, the husband named Donald and Rosie Stevenson as third-party defendants. The divorce was tried to the court. The case against the Stevensons was tried to a jury, which awarded the husband $2,712,500 in actual and exemplary damages. The final judgment in the case incorporated both the jury's verdict against the Stevensons and

the court's findings and conclusions in the divorce action.

The Stevensons filed a motion for new trial and for a remittitur. After the trial court granted the motion for new trial, the husband volunteered a remittitur, which the trial court accepted. The trial court then set aside the order for a new trial and reinstated the judgment, less the remittitur. The trial court's final award to the husband against the Stevensons was $965,300 in actual and exemplary damages. The Stevensons appeal from that judgment.

## I. Deposition testimony

■ In their first point of error, the Stevensons claim the trial court erred in admitting the deposition testimony of three witnesses offered by the husband. The Stevensons objected to the depositions because they were not parties when the husband took the depositions. The Stevensons argue they were denied their right to cross-examine the witnesses.

The Stevensons rely on Tex.R.Civ.P. 207(1)(a), which states in part:

At the trial ... a deposition taken in the same proceeding, insofar as admissible under the Texas Rules of Civil Evidence, may be used by any person for any purpose against any party who was *present or represented* at the taking of the deposition or who had reasonable notice thereof.

(Emphasis added.) The Stevensons cite *Heldt Bros. Trucks v. Silva*, 464 S.W.2d 931, 937 (Tex.Civ.App.—Corpus Christi 1971, no writ), *Elizondo v. Tavarez*, 596 S.W.2d 667, 670 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.), and *Couch v. Mallory*, 638 S.W.2d 179, 181 (Tex.App.—Corpus Christi 1982, writ dism'd), to support their interpretation of rule 207, that

the depositions were inadmissible against them.

In *Heldt*, a corporate defendant complained on appeal that the trial court permitted plaintiff to use depositions that were taken before it was joined as a party. 464 S.W.2d at 937. The Corpus Christi Court of Appeals held that there was no privity between the two defendants. Further, to admit the deposition into evidence would be highly prejudicial to the corporate defendant because it did not have an opportunity to cross-examine the witness. *Id.* The *Heldt* court said the corporate defendant should have been afforded an opportunity to cross-examine the witnesses. *Id.*

In *Elizondo*, plaintiff sued a doctor in April, and in September, took the deposition of a nurse. 596 S.W.2d at 670. Nine days after taking the deposition, plaintiff added the hospital as a party. At trial, four years later, plaintiff offered the nurse's deposition. *Id.* at 669. When the hospital objected, the trial court excluded the nurse's deposition against the hospital. On appeal, the Corpus Christi court affirmed and said that plaintiff had the obligation to re-take the deposition after it joined the hospital as a party to the suit. *Id.* at 671. *See also Couch*, 638 S.W.2d at 181 (where, without details, the court restated the rule that a deposition taken before a party is joined is inadmissible against that party).[1]

The Texarkana Court of Appeals' application of the rule is consistent with the Corpus Christi court's interpretation. In *Safeco Ins. Co. v. Gipson*, 619 S.W.2d 275, 278 (Tex.Civ.App.—Texarkana 1981, writ dism'd w.o.j.), after filing suit against Ms. Phillips and her employer, a church, plaintiff deposed Ms. Phillips. About a year later, plaintiff dismissed the church and added Safeco, the insurance carrier for the

---

1. There are two other cases from the Corpus Christi Court of Appeals that are relevant. In *Morehouse v. Brink*, 647 S.W.2d 712, 715 (Tex. App.—Corpus Christi 1982, no writ), plaintiff orally deposed a witness before joining defendant Morehouse. After Morehouse was joined, plaintiff re-deposed the witness by written questions. Morehouse had notice of the deposition by written questions, but did not propound questions. The court of appeals held that More-

house waived his right to cross-examine the witness and his objection to the oral deposition. In *Academy Welding v. Carnes*, 535 S.W.2d 917, 920 (Tex.Civ.App.—Corpus Christi 1976, no writ), plaintiff deposed a witness before adding Academy Welding as a defendant. At a venue hearing, the trial court permitted the use of the deposition. On appeal, the court reversed, holding that plaintiff was required to re-take the deposition of the witness if it wanted to use it.

church, as a defendant. At a venue hearing, plaintiff introduced Ms. Phillips' deposition without objection from Safeco. On appeal, the court rejected Safeco's argument that the deposition was hearsay because the attorney for Safeco was present at Ms. Phillips' depositions, as the attorney for the church, and there was a contractual relationship between the church and its insurance carrier.

Applying the principles of these cases, we note that the husband did not re-depose the witnesses after the Stevensons were joined as parties to the suit; the Stevensons did not have a contractual relationship with either the husband or the wife; and, the Stevensons' attorney was not present when the witnesses were deposed. Thus, the Stevensons did not have an opportunity to cross-examine the deponents.

The husband urges that the depositions were admissible pursuant to Tex.R.Civ.P. 207(1)(c), which provides:

> If one becomes a party after the deposition is taken and has an *interest similar* to that of any party described in a. or b. above, the deposition is admissible against him only if he has had a reasonable opportunity, after becoming a party, to redepose the deponent, and has failed to exercise that opportunity.

(Emphasis added.) Section (1)(c) of rule 207 was added in 1988, after the decisions in the above cited cases. Rule 207 now extends the admissibility of depositions to any party with a *similar interest.* The rule now charges the late parties to redepose the witness if they have a reasonable opportunity.

The husband claims the second amended petition put the Stevensons on notice as early as January 1986 that his claims against them were similar to his claims against the wife. In that pleading, the husband alleged collusion, conspiracy, and secreting funds. The husband argues that the Stevensons had a reasonable opportunity to redepose the deponents, which they did not exercise. The depositions were filed with the trial court on August 1, 1985. The Stevensons were joined in January 1986, and the case was tried in September 1988.

The husband argues that the Stevensons had constructive notice of the court's file because, with due diligence, the Stevensons could have learned of the depositions on file. We do not need to reach the constructive notice issue because the Stevensons had actual notice that the depositions were on file about three months before trial. On their attorney's billing records, he indicated that his office researched the "use of deposition testimony before the Stevensons were parties." Also, the husband in his deposition on September 16, 1986, told the Stevensons that Singer's deposition had been taken and that Connors was also a person with knowledge of relevant facts.

The Stevensons argue that they had no reason to redepose these witnesses because the witnesses only testified as to "confrontations, harassment, threats and surveillances." The Stevensons assert that this testimony was not relevant to any issue in the case before the additional causes of action were added, 10 days before trial.

Applying rule 207(1)(c) and the cases discussed above, we hold the Stevensons did not have an interest sufficiently similar to the wife to impose a burden on them to depose the witnesses. Thus, the trial court erred in permitting the husband to use the depositions.

We sustain point of error one.

## II. The rebutting witness

■ In point of error two, the Stevensons contend the trial court abused its discretion when it refused to let their witness, Mary Jo Spangler, testify. When the Stevensons offered Spangler as a witness, the trial court ruled she could not testify because she was not listed as a witness in response to discovery requests. When Spangler was offered as a rebuttal witness, the court again refused to allow her to testify. On appeal, the Stevensons contend they offered her testimony to rebut the deposition testimony of the three witnesses.

When a party offers a witness it did not list in its answers to discovery requests, the trial court should automatically exclude the witness. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986). It is immaterial that the witness' testimony is offered as rebuttal. *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 876–77 (Tex.App.—Corpus Christi 1988, writ denied); *Walsh v. Mullane*, 725 S.W.2d 263, 264–65 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). To escape the automatic sanction, the party who wants to call the unidentified witness must show good cause why the witness was not listed. *Gutierrez v. Dallas Indep. School Dist.*, 729 S.W.2d 691, 694 (Tex.1987). The fact that a party has little or no use at trial for a witness' testimony will not ordinarily excuse his failure to name the witness as a source of relevant facts because the party seeking discovery may have an important use for such testimony. *Walsh*, 725 S.W.2d at 265.

To prove good cause, the Stevensons argued to the trial court that they did not name Spangler as a witness because they did not know they would need Spangler until the husband amended his pleadings, 10 days before trial. The Stevensons also contend they could not anticipate that the trial court would admit the depositions of the witnesses taken when they were not parties to the suit. For these reasons, the Stevensons claim they did not know they needed Spangler's testimony until trial.

The burden was on the Stevensons to show a good cause for not listing Spangler as a witness. *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.*, 701 S.W.2d 243, 246–47 (Tex.1985). We hold that the Stevensons proved good cause when they said they did not list Spangler because they had no idea they needed her until the trial court refused to strike the late amendments and permitted the husband to use the three depositions.

We hold that, once the trial court permitted the husband to use the depositions of the three witnesses, the trial court abused its discretion when it refused to permit the Stevensons to call Spangler.

To show the trial court abused its discretion by rejecting Spangler as a witness, the Stevensons must convince us that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987).

To obtain reversal of a judgment based on error in the exclusion of testimony, an appellant must show that the trial court's ruling was in error, and that the error was calculated to cause, and probably did cause, rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *see Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Unless an appellant can show that the whole case turns on the evidence the court admitted or excluded, it is difficult to prove the ruling on the evidence resulted in reversible error. *Id.*

We hold that Spangler's testimony was material to rebut the testimony of the three deposition witnesses. The exclusion of her testimony, therefore, was reversible error under TEX.R.APP.P. 81(b)(1).

We sustain point of error two.

### III. Statute of limitation

In point of error three, the Stevensons argue that the trial court erred in denying their motion for judgment notwithstanding the verdict (j.n.o.v.) and in rendering judgment for the husband because the causes of action for invasion of privacy, intentional infliction of emotional distress, and conspiracy to invade privacy and inflict emotional distress contained in the third and fourth amended petitions were barred by the statute of limitations. The Stevensons assert that these claims are all governed by the two-year statute of limitations.

Texas Civil Practice & Remedies Code Annotated § 16.003(a) (Vernon 1986) provides:

A person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues.

Civil conspiracy is governed by the two-year statute of limitations. *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 821–22 (Tex.App.—Corpus

Christi 1988, writ denied). Invasion of privacy is governed also by the two-year statute of limitations. *See Covington v. Houston Post,* 743 S.W.2d 345, 347–48 (Tex.App. —Houston [14th Dist.] 1987, no writ) (held the two-year statute applicable to placing a person in a false light); *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1087 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985) (applied the two-year statute of limitations to public disclosure of private facts).

No Texas court has decided the statute of limitations for intentional infliction of emotional distress. Generally, a tort-based cause is subject to the two-year statute. *Church v. Ortho Diagnostic Sys., Inc.,* 694 S.W.2d 552, 555–56 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Thus, the tort of intentional infliction of emotional distress should be governed by the two-year statute of limitations.

■ The Stevensons complain that the causes of action added in the third and fourth amended petitions filed on August 26 and 28, 1988 were barred by limitations. The husband argues that the two amendments related back to the second amended petition, and therefore, the new claims were not barred by limitations. Texas Civil Practice & Remedies Code Annotated § 16.068 (Vernon 1986) provides:

> If a filed pleading relates to a cause of action ... that is not subject to a plea of limitations when the pleading is filed, a subsequent amendment ... that changes the facts or grounds of liability or defense is not subject to a plea of limitations unless the amendment ... is wholly based on a new, distinct, or different transaction or occurrence.

■ The supreme court found that the purpose of § 16.068 was to limit the application of the statutes of limitations to amended pleadings. The test is as follows: if the amended pleading does not allege a wholly new, distinct, or different transaction, then it relates back to the original filing, and is not subject to a limitations defense. *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex.1985). Even if the amended petition contains new causes of action, the new

causes are not barred by the statute of limitations unless they arise from a wholly different transaction. *Providence Hosp. v. Truly,* 611 S.W.2d 127, 133–34 (Tex.Civ. App.—Waco 1980, writ dism'd).

The husband's third and fourth amended petitions alleged new causes of action. The question is whether these new causes of action were based on new, distinct, and different transactions. The transaction referred to in the husband's second amended petition was "using their own personal banks and bank accounts to launder and hide money." In the husband's fourth amended petition, the transactions were "physical surveillance," "harassing telephone communications," and "harassing physical encroachments." The conspiracy to invade, invasion of privacy, conspiracy to inflict, and intentional infliction of emotional distress causes of action did not arise out of the same transactions between the Stevensons and the wife as did the causes of action in the second amended petition, which joined the Stevensons as parties. Thus, these new causes of action do not relate back to the second amended petition. Each new cause of action alleged in the third and fourth petition must satisfy the two-year statute of limitations.

The jury's answers to the limitations issues establish that all of the conduct comprising these new claims occurred before August 26, 1986. The husband's claims of conspiracy to invade, invasion of privacy, conspiracy to inflict, and intentional infliction of emotional distress, raised for the first time in his third amended petition on August 26, 1988, therefore, are all barred by the statute of limitations.

The husband argues that the new claims were a mere amplification of his claim for mental anguish in the second amended petition. The mental anguish alleged in the second petition was not cited as a transaction or occurrence, but as an element of damage—the "result" of the Stevensons' alleged conduct of conspiring to secret funds and defraud the community estate.

The trial court erred in denying the Stevensons' motion for j.n.o.v. and in rendering judgment for the husband on the claims

of conspiracy to invade, invasion of privacy, conspiracy to inflict, and intentional infliction of emotional distress because these claims were barred by the statute of limitations.

We sustain point of error three. Because our holding is law of the case, we reverse and render judgment in favor of the Stevensons on the claims barred by limitations.

### IV. The trial amendment

■ In point of error four, the Stevensons assert that the trial court abused its discretion in denying their motion for leave to file a trial amendment because the husband did not show the amendment would prejudice him. The husband objected to the inclusion of special issues 11A and 12A in the court's charge to the jury, which related to the accrual of the causes of action. In response, the Stevensons asked to amend their pleadings to include a statute of limitations as an affirmative defense. Although the trial court denied their trial amendment, it submitted the special issues 11A and 12A.

Because their requested questions were submitted to the jury, the Stevensons have no cause for complaint. The objective of the trial amendment was accomplished without the amendment. Thus, any error the trial court may have committed was harmless.

We overrule point of error four.

### V. The Stevensons' motion to strike amended pleadings

■ In point of error five, the Stevensons contend that the trial court abused its discretion in denying their motion to strike the husband's third and fourth amended petitions, filed 10 and eight days, respectively, before trial. The husband responds that the Stevensons did not preserve this error because they did not file a motion for continuance.

The Stevensons were brought into the divorce action by the husband's second amended petition, filed in January 1986. In that petition, the husband asked for damages for the money the Stevensons helped

his wife secret and launder. From the five sentences of allegations directed at the Stevensons, the Stevensons estimated the husband sought $30,000 dollars in damages.

After being joined in the suit, the Stevensons deposed the husband. At the husband's deposition, he was asked what kind of claims he intended to pursue against the Stevensons. The husband's counsel interrupted his client to say that the only claims against the Stevensons would be

> [B]asically money matters, nothing else. I think we have claimed conspiracy to defraud kind of stuff. If you are talking about assault or some kind of tortious claim other than what's already in [the pleadings], I am not anticipating that.

Relying on that description of the suit, the Stevensons did not pursue liability or damage issues relating to tortious claims not in the pleadings.

Two and a half years after joining the Stevensons, and just 10 and eight days before trial the husband filed two amended petitions. On Friday, August 26, 1988, at 7:59 p.m., 10 days before trial, the husband filed his third amended petition. In that petition, the husband added causes of action for conversion, invasion of privacy, intentional infliction of emotional distress, and conspiracy to do these acts. In that petition, the husband expanded the earlier five sentences of allegations to 22 pages, and increased the estimated $30,000 damage claim to $2.7 million.

On Sunday, August 28, 1988, at 8:24 a.m., the husband filed the fourth amended petition, adding a cause of action for a lost job opportunity. In that petition, the husband expanded the earlier 22 pages of allegations to 25 pages, and increased the damage claim from $2.7 million to $16.5 million.

The Stevensons, who received notice of the amendments on August 29, seven days before trial, filed a motion to strike the late pleadings. The trial court refused. The Stevensons contend that the late pleadings changed the entire tenor of the suit and the new causes of action required different discovery than that already undertaken.

The rule that controls the right to amend is rule 63 of the Texas Rules of Civil Procedure, which provides:

Parties may amend their pleadings ... at such time as *not to operate as a surprise* to the opposite party; provided, that any amendment offered for filing *within seven days of the date of trial ... shall be filed only after leave of the judge is obtained,* which leave shall be granted by the judge unless there is a showing that such amendment will operate as a surprise of the opposite party.

(Emphasis added.)

There is not, under rule 63, an unlimited right to amend pleadings. A party has a right to amend pleadings eight days or more before trial if the amendment does not "operate as a surprise to the opposite party." Tex.R.Civ.P. 63. If a party files pleadings seven days or less before trial, the pleadings must not operate as a surprise and the party must obtain leave of court. *Id.* Here, the husband filed his last amended pleading eight days before trial. Thus, the husband did not need to obtain leave of court. Surprise is the only issue.

■ We will not disturb a trial court's ruling on refusal to strike the late amended pleadings, unless the complaining party shows that the court abused its discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980). Some courts require the party opposing the late amendment to claim surprise and move for a continuance. *See, e.g., Louisiana & Arkansas Ry. v. Blakely,* 773 S.W.2d 595, 597 (Tex.App.—Texarkana 1989, writ denied); *Howard v. Phillips,* 728 S.W.2d 448, 450–51 (Tex.App.—Fort Worth 1987, no writ).

The husband contends the Stevensons were required to file a motion for continuance to preserve the error. The Stevensons contend they were not required to file a motion for continuance, and cite *Hajdik v. Wingate,* 753 S.W.2d 199, 202–204 (Tex.App.—Houston [1st Dist.] 1988), *aff'd,* 795 S.W.2d 717 (Tex.1990). In *Hajdik,* we held a trial court abused its discretion when it

permitted appellee to amend pleadings on the eve of trial, raising a totally new cause of action. In defense of the trial court, appellee argued that appellant should have filed a motion for continuance to preserve error on appeal. *Id.* at 203. We held a motion for continuance was only one factor to consider.

The factors we held important in *Hajdik* were: (1) the amended petition was filed two years after the suit was filed; (2) the amendment was made on the eve of trial; (3) the amendment introduced a totally new cause of action; (4) the late cause of action was not based on recently discovered matters; and (5) the complaining party alleged surprise and that he was not prepared to try the new cause of action. *Hajdik,* 753 S.W.2d at 204.

The factors present in this case are: (1) the amended petitions were filed more than two years after the Stevensons were added to the suit; (2) the amendments were made 10 and eight days before trial (the Stevensons received them seven days before trial); (3) the amendments introduced five totally new causes of action, increasing liability from an estimated $30,000 to over $16.5 million; (4) the late causes of action were not based on recently discovered matters; and (5) the Stevensons alleged surprise and that they were not prepared to try the new cause of action.

A significant similarity between this case and *Hajdik* is the short period between filing the amendment and trial: In *Hajdik,* the plaintiff amended his pleadings within five days before trial.[2] Here, the husband filed the first of the amended pleadings on a Friday evening, after the courthouse had closed, and filed the last of the amended pleadings on a Sunday morning. The Stevensons did not receive notice of the pleadings until seven days before trial.

We hold that, because the two amendments were a wholesale revision of the husband's suit against the Stevensons, the trial court abused its discretion when it denied the motion to strike late pleadings. Accordingly, we sustain point of error five.

---

**2.** The exact date of filing the amended petition in *Hajdik* is disputed.

## VI. The double recovery

In point of error eight, the Stevensons argue that the trial court erred in denying their motion for j.n.o.v. and motion for new trial, and in rendering a damage judgment for defrauding the community estate and for converting community property because such an award is a double recovery.

■ Double recoveries are not permitted. *Southern County Mut. Ins. Co. v. First Bank and Trust of Groves*, 750 S.W.2d 170, 173–74 (Tex.1988). When the prevailing party fails to elect between alternative measures of damages, the court should utilize the findings affording the prevailing party the greater recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987).

In *American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 246 (Tex.App.—Houston [1st Dist.] 1988, writ denied), we held that when the trial court errs in not requiring plaintiff to elect between damages on alternative causes of action, the court of appeals will make the election for him. In such a case, the court will choose the cause of action for which the jury made the highest award. *Id.*

If the claims of defrauding the community estate and converting community property amounted to a double recovery, the trial court should have granted judgment to the husband only for the greater recovery, not for both. Because the entire case will be retried, we need not decide this issue.

## VII. The sufficiency of the evidence

Because we already have sustained points of error that require us to remand, we do not need to address any factual sufficiency points that, if sustained, merely compel retrial. We, therefore, need not address the factual sufficiency challenges in points of error 6, 7, 9, 10, 11, and 12.

We must, however, address the points which, if granted, would compel a rendition of judgment for the Stevensons. Thus, we will consider the challenges to the legal sufficiency of the evidence.

When we review the record, if we find there is more than a scintilla of evidence to support a finding, we must overrule the point of error. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

### A. Fraud

■ In point of error six, the Stevensons contend the trial court erred in denying their motions for instructed verdict and for j.n.o.v. because there is no evidence of fraud or conspiracy to defraud, because the Stevensons made no misrepresentations of material fact to the husband on which he relied.

The Stevensons sought reimbursement from the husband for expenditures for medical bills, furniture, and cash advances on credit cards made for the wife. Although the copies of the documents were noted as "for Nalda," the wife, the hospital bill was incurred by Rosie Stevenson. Some of the furniture, purchased with community funds, was delivered to the Stevensons' home. Although the Stevensons claimed they advanced $9,300 of $12,100 from credit card advances to the wife, $10,600 of that was deposited back into the Stevensons' personal account within hours or days of the withdrawal.

We find there is more than a scintilla of evidence to support the finding, and we overrule point of error six.

### B. Conversion of community property

■ In point of error seven, the Stevensons contend the trial court erred in denying their motions for instructed verdict and for j.n.o.v. because there is no evidence of conversion or conspiracy to convert, because the husband expressly or implicitly consented to or ratified the taking.

Although Rosie Stevenson was aware of the temporary orders forbidding the sale or other disposal of community property, the Stevensons helped the wife sell a 1977 Cadillac. The buyer testified that he bought the car from Rosie Stevenson, and gave her a cashier's check payable to Rosie Stevenson. Donald Stevenson paid Noff North American movers to move some of the

Koutzarovs' property to Canada. The husband deposited money in a Canadian bank account in the name of Natasha Gomez da Costa (the wife's child) for tax purposes. The wife withdrew two checks totaling about $30,000 from the account, and with Rosie Stevenson's help, deposited the money in the Stevenson's bank account.

We find there is more than a scintilla of evidence to support the finding and we overrule point of error seven.

### C. Conversion of separate property

In point of error nine, the Stevensons assert that the trial court erred in denying their motion for j.n.o.v. and motion for new trial because there is no evidence of conversion and conspiracy to convert the husband's separate property.

The jury identified certain silver flatware and jewelry as the husband's separate property. The husband kept his separate property in a safety deposit box. During the week of June 25, 1984, the wife removed the jewelry from the safety deposit box.

The husband admits that the only evidence that supports the jury's finding that the Stevensons conspired to convert his separate property is circumstantial. In his brief, the husband claims that he talked to Mrs. Stevenson about the settlement during the week of June 25, the same week the jewelry was removed. The husband claims that the Stevensons' "involvement" with his former wife during the week of June 25 is some evidence that they conspired to convert his separate property. We disagree.

We find there is no evidence to support the finding and we sustain point of error nine.

### D. Damages

In point of error 10, the Stevensons argue that the trial court erred in denying their motion for j.n.o.v. because there is no evidence to support the judgment for $70,-

3. Justice Warren participated upon original submission, but not on rehearing. Justice Warren

100 in damages for conversion and conspiracy to convert the husband's separate property. In point of error 11, the Stevensons argue that the trial court erred in denying their motion for j.n.o.v. because there is no evidence to support judgment for $75,000 in damages for conspiracy to defraud and conspiracy to convert community assets. Both points may well have merit. We need not address them, however, because the entire case will be retried.

### VIII. Summary

We reverse and render judgment as to point of error three, holding that the causes of action for invasion of privacy, intentional infliction of emotional distress, and conspiracy to invade privacy and inflict emotional distress were barred by the statute of limitations. We reverse and render judgment as to point of error nine, holding that there is no evidence to support the finding that the Stevensons converted or conspired to convert the husband's separate property. We reverse the remainder of the judgment and remand the cause for a new trial.

DUGGAN, J., also participating.[3]

