OPINION


 

No. 04-01-00723-CV



CRAM ROOFING CO., INC.,


Appellant



v.



Dennis J. PARKER,


Appellee



From the 166th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-02636

Honorable Martha Tanner, Judge Presiding


ON APPELLANT'S MOTION FOR REHEARING


Opinion by: Catherine Stone, Justice

Dissenting opinion issued August 29, 2003 by: Sarah B. Duncan, Justice, joined by

Paul W. Green, Justice and Karen Angelini, Justice


Sitting En Banc: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: December 17, 2003




APPELLANT'S MOTION FOR REHEARING DENIED; AFFIRMED

 Cram Roofing Company appeals the trial court's judgment against it in Dennis
Parker's libel suit. The case is now before the court on Cram Roofing's motion for rehearing
en banc. The motion for rehearing en banc is denied; however, we withdraw our majority
en banc opinion and vacate our judgment of August 29, 2003, and substitute the following
in their stead. The dissenting opinion issued on August 29, 2003 remains unchanged. We
affirm the trial court's judgment.

Factual and Procedural Background


 In November 1998, Cram Roofing hired Parker as the general manager of its branch
office in the Rio Grande Valley. Cram Roofing also hired Joe Zamora as the production
manager. In early July 1999, Zamora abruptly quit. Given the circumstances of Zamora's
resignation and the subsequent disappearance of the work crew, as well as his inability to
immediately locate or contact Parker, Cram Roofing's president, Gary Cram, assumed that
Parker had also resigned and closed the Valley office. According to Parker, he had not
resigned; rather, he was terminated by Cram when Cram closed the Valley office. 

 Shortly after Cram Roofing's Valley office was closed, Parker and Zamora started a
new business in direct competition with Cram Roofing. In response, on August 25, 1999,
Cram Roofing's attorney wrote twelve identical letters to various suppliers and roofing
companies that Cram Roofing believed would become Parker's prospective customers. The
August 25, 1999 letter stated:

 I have been retained by Cram Roofing Company, Inc. ("Cram
Roofing") to represent its interest in pursuing a legal action against Joe
Zamora ("Zamora") and Dennis Parker ("Parker"), and potentially against your
company.


 On or about July 5, 1999, Zamora and Parker voluntarily terminated
their employment with Cram Roofing. As a condition of their employment
with Cram Roofing, both Zamora and Parker executed a two-year, enforceable
Noncompetition and Confidentiality Agreement ("the Agreement"). The
Agreement provides, among other things, that neither party shall, in any
capacity, compete within a 100 mile radius of Cram Roofing's central office
in San Antonio, Texas, or its branch office in Pharr, Texas. The Agreement
further states that neither party shall contact or solicit for any competitive
purpose any person or entity who is then a customer, client, vendor or supplier
of Cram Roofing, or who was a customer, client or supplier of Cram Roofing
within the preceding two years.


 Cram Roofing intends to vigorously pursue a legal action against all
entities that have conspired or in any way acted in concert to induce breach of
the Agreement or that have tortiously interfered with Cram Roofing's
contracts. Said potential causes of action include, but may not be limited to
civil conspiracy, misappropriation of trade secrets, tortious interference,
intentional infliction of emotional distress, and slander. Cram Roofing has
reason to believe that your company may be liable for damages sustained by
Cram Roofing as a result of your company's affiliation with Zamora and/or
Parker. Cram Roofing will seek to recover all profits obtained by your
company as a result of Zamora and/or Parker's illegal activities. Further, Cram
Roofing will seek to recover all damages it has incurred in the loss of
contracts, which loss has been the direct result of Zamora and Parker's breach
of the Agreement, tortious interference, and civil conspiracy.


 This letter is to serve as formal written notice of Cram Roofing's intent
to file a lawsuit and include your company as a named defendant unless I hear
from you within ten (10) days.


Shortly thereafter, Parker filed suit against Cram Roofing and Gary Cram. The basis for
Parker's libel claim was the August 25 letter, specifically, the statement that Parker had
"voluntarily terminated" his employment with Cram Roofing and the accusation that he had
engaged in "illegal activities." The jury found Cram Roofing had libeled Parker. In
accordance with the jury's verdict, the trial court rendered judgment in Parker's favor.

Statute of Limitations

 Cram Roofing contends Parker's libel claim is barred by the one-year statute of
limitations governing libel claims. See Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a)
(Vernon 2002) (specifying one-year limitations period for suits alleging defamation). Parker
responds that his libel claim was fully outlined in his Second Amended Original Petition,
which was timely filed less than a year after the August 25 letter was sent. He further
contends that even if his Second Amended Original Petition is not deemed sufficient to allege
a libel claim, his Third Amended Original Petition specifically alleged libel, and though filed
more than a year after the August 25 letter was published, it relates back to his earlier
petitions and thus is not barred by limitations. 

 Parker's "relation back" claim is based upon section 16.068 of the Civil Practice and
Remedies Code, which provides:

 If a filed pleading relates to a cause of action, cross action, counterclaim, or
defense that is not subject to a plea of limitation when the pleading is filed, a
subsequent amendment or supplement to the pleading that changes the facts
or grounds of liability or defense is not subject to a plea of limitation unless the
amendment or supplement is wholly based on a new, distinct, or different
transaction or occurrence.


Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (Vernon 1997). A two-pronged test exists to
determine whether an amended pleading relates back to an earlier pleading. Id.; see Leonard
v. Texaco, 422 S.W.2d 160, 163 (Tex. 1967) (interpreting the predecessor statute to section
16.068). First, the original cause of action asserted in the first pleading must have been
timely filed; and second, the amended pleading which alleges new facts or grounds of
liability or defense must not be wholly based on a new, different, or distinct transaction or
occurrence. Tex. Civ. Prac. & Rem. Code Ann. § 16.068; see Cooke v. Maxam Tool &
Supply, Inc., 854 S.W.2d 136, 141 (Tex. App.--Houston [14th Dist.] 1993, writ denied).
Thus, even if the amended petition contains new causes of action, "the new causes [of action]
are not barred by the statute of limitations unless they arise from a wholly different
transaction." Stevenson v. Koutzarov, 795 S.W.2d 313, 319 (Tex. App.--Houston [1st Dist.]
1990, writ denied).

 Even a cursory review of Parker's timely-filed Second Amended Original Petition and
his later-filed Third Amended Original Petition leads to the conclusion that the libel cause
of action specifically alleged in the Third Amended Petition does not arise from a wholly
different transaction. Parker's Second Amended Original Petition recites the facts
surrounding his employment with Cram Roofing, his on-the-job injury, the closing of the
Valley office, his dismissal from employment, his attempt at establishing a new business with
his co-worker, and the dissemination of Cram's August 25 letter. The letter, described as
"knowingly false, malicious and unlawful," is attached as Exhibit A to the petition. The
petition also alleges that as a result of Cram's letter, Parker has lost business and profits, and
has suffered embarrassment, frustration, anxiety, and anguish. Finally, three causes of action
are specified: violation of the Texas Workers' Compensation Act; rescission of the covenant
not to compete; and tortious interference with contract. 

 The Third Amended Original Petition contains the identical allegations regarding
facts, damages, and causes of action. However, the petition contains an additional paragraph
specifically setting forth a claim for statutory libel and libel per se. The new paragraph states
in its entirety:

 Plaintiff incorporates all of the fact provisions set forth above and states that
the attached Exhibit "A" violates Tex. Civ. Prac. & Remedies Code § 73.001
regarding statutory libel and is libel per se. As a direct and proximate result
of the letter Plaintiff has been damaged for which he now sues.


The libel cause of action is clearly based upon the facts and circumstances previously
alleged. No new transaction or facts are introduced in the Third Amended Petition that were
not alleged in the earlier petition. Since the original causes of action were timely filed, and
since the libel claim is not "wholly based on a new, distinct or different transaction or
occurrence," the Third Amended Petition relates back to the earlier timely-filed Second
Amended Original Petition. See Lathem v. Richey, 772 S.W.2d 249, 255 (Tex. App.--Dallas
1989, writ denied). Cram's first issue is overruled.

"Voluntarily Terminated"


 Cram Roofing argues that the statement in its August 25 letter that Parker was
"voluntarily terminated" is not, as a matter of law, defamatory. We agree.

 A statement is defamatory if it "tends to injure a living person's reputation and thereby
expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any
person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code Ann.
§ 73.001 (Vernon 1997). Whether the words used are capable of a defamatory meaning is
a question of law. Musser v. Smith Protective Servs., Inc., 723 S.W.2d 653, 654 (Tex. 1987).
The allegedly libelous statements must be construed "as a whole in light of surrounding
circumstances based upon how a person of ordinary intelligence would perceive the entire
statement." Id. at 655.

 To "voluntarily terminate" or quit one's employment "means 'to give up
employment,' 'stop working,' or to 'leave.'" San Antonio Express News v. Dracos, 922
S.W.2d 242, 248 (Tex. App.-- San Antonio 1996, no writ) (quoting Webster's Third New
International Dictionary 1867 (1981)). We hold that the statement that Parker had quit
his employment with Cram Roofing, when construed in light of the remainder of the August
25 letter and the surrounding circumstances, did not "tend[] to injure [Parker's] reputation
and thereby expose [him] to public hatred, contempt or ridicule, or financial injury or to
impeach any person's honesty, integrity, virtue, or reputation." See id. (holding that
statement that plaintiff "quit" was not defamatory).

"Illegal Activities"


 Cram Roofing also argues its statement that Parker had engaged in "illegal activities"
is substantially true. Truth is a defense to a libel action. Tex. Civ. Prac. & Rem. Code Ann.
§ 73.005 (Vernon 1997). The statement need not be true in every detail; substantial truth is
sufficient to establish the defense. McIlvain v. Jacobs, 794 S.W.2d 14, 15-16 (Tex. 1990).
Under the "substantial truth" test, the statement in question is examined in its entirety to
determine whether the "gist" of the statement is substantially true. Id. at 16. In making this
evaluation, the question is whether, in the mind of the average person who heard or read the
statement, the statement was more damaging to the plaintiff's reputation than a truthful
statement would have been. Id. If the underlying facts regarding the "gist" of the statement
are undisputed, then substantial truth can be determined as a matter of law. Id. Obviously,
if the underlying facts are disputed, then a fact issue arises. The affirmative defense of
substantial truth is a complete defense, and the burden is on the defendant -- here, Cram
Roofing -- to prove the truth or substantial truth of the allegedly defamatory statement.
Tatum v. Liner, 749 S.W.2d 251, 256 (Tex. App.--San Antonio 1988, no writ). 

 Cram Roofing contends we should set aside the jury verdict because the alleged
libelous statement at issue in this case is substantially true as a matter of law. Relying on
McIlvain, Cram argues that "[b]ecause the underlying facts (use of the phrase 'illegal
activities') is undisputed, the Court 'can disregard any variance with respect to items of
secondary importance and determine substantial truth as a matter of law.'" Cram's argument
misses the mark for two reasons. First, McIlvain does not support Cram's argument that
there is no fact issue merely because the parties do not dispute what words were contained
in Cram Roofing's letter. McIlvain provides that substantial truth can be determined as
matter of law "if the underlying facts as to the gist of the defamatory charge are undisputed."
McIlvain, 794 S.W.2d at 16 (emphasis added). When the gist of the defamatory statement
- that is, the essential meaning of the statement - is subject to differing interpretations, a fact
question arises. See Scripps Tex. Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 836 (Tex.
App.--Corpus Christi 2003, pet. denied) (holding fact issues precluded summary judgment
on substantial truth defense); Entravision Communications Corp. v. Belalcazar, 99 S.W.3d
393, 398 (Tex. App.--Corpus Christi 2003, pet. denied) (same); TSM AM-FM TV v. Meca
Homes, Inc., 969 S.W.2d 448, 452 (Tex. App.--El Paso 1998, pet. denied) (holding summary
judgment evidence failed to establish the truth or substantial truth of the statements as a
matter of law). Here, the trial court determined that a fact issue was presented and submitted
an issue to the jury. We review the jury's determination deferentially.

 Cram also argues that the determination of substantial truth is an issue of law because,
as the dissent contends, a contract has the force of law and violation of a contract is thus
"illegal." While a contract may indeed have the force of law, breach of a contract is not
necessarily an illegal activity. It is a civil breach of an obligation imposed by the contract.
Further, the alleged breach of the noncompetition agreement in this case did not result in
automatic remedies or penalties. At most the alleged breach vested Cram Roofing with a
claim for breach of contract, with the potential to obtain remedial awards from a court after
successful presentation of the breach of contract claim. 

 Ultimately, the question here is whether Cram's statement that Parker had engaged
in "illegal activities" is capable of defamatory meaning, and if so, whether it is substantially
true. We review these issues deferentially, giving due regard to the trial court's
determination that Cram's statement was sufficiently ambiguous or questionable such that
a jury question arose. See Carr v. Brasher, 776 S.W.2d 567, 570 (Tex. 1989); Gray v. HEB
Food Store No. 4, 941 S.W.2d 327, 329 (Tex. App.--Corpus Christi 1997, writ denied)
(holding that when language is ambiguous the factfinder should be entitled to determine the
statement's meaning and its effect on ordinary listener). 

 Parker argues "illegal activities" "implies to the average reader a violation of penal
law ." In support of this contention he points to the testimony of at least two witnesses that
"illegal activities" implied criminal conduct. Gary Cram admitted that he might consider it
an insult to his reputation if he were accused of engaging in "illegal activities." He also
admitted that when the word "illegal" is used, he thinks, at least some of the time, of criminal
conduct. Finally, Cram agreed that Parker "did not do anything criminal" to Cram.

 Hugh Batchelder, a retired contractor, testified that if he received a letter about a
contractor such as the one sent out about Parker, the reference to "illegal activities" would
make him nervous and make him "want to stay away from that individual." In fact, when
asked what the term "illegal activities" as used in the letter at issue meant to him, Batchelder
responded, "Well, nowadays time, I think he would either be a dope peddler or a gun runner."

 It is of little consequence that the term "illegal activities" was preceded by a listing
of numerous civil causes of action. Neither Batchelder nor Cram, both of whom are
experienced businessmen, had a clear understanding of what any of those causes of actions
were. Further, although Cram's attorney understood that the term "illegal activities" was
meant to refer only to civil actions, the test is not what Cram's attorneys intended or
understood. The test is whether in the mind of an average person reading this statement, the
statement accused Parker of engaging in criminal illegal activity. 

 No doubt the jury considered the testimony of these two witnesses when it read in the
court's charge that "it is sufficient to establish libel if in reading the statement an ordinary
person would draw a reasonable conclusion that [Parker] was charged with a violation of
some criminal law." The jury had ample evidence before it from which to conclude that an
ordinary person would believe that the reference to "illegal activities" meant criminal
activities. Having determined that on this record the jury could reasonably have found that
the gist of the phrase "illegal activities" meant criminal activities, the evidence further
supports the jury's implied finding that the gist of the statement that Parker had engaged in
"illegal activities" was not substantially true.

 Guided by the trial court's instructions and definitions, and in light of testimony from
witnesses that "illegal activities" conjures up for them thoughts of criminal violations, the
jury could properly determine, as it did, that Cram libeled Parker and that the gist of Cram's
statement was not substantially true. We are not at liberty to substitute our judgment for that
of the jury. See Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986). Cram's third
issue is overruled.

Validity of Non-Compete Agreement

 In its fourth issue Cram Roofing claims the trial court erred in failing to allow Cram
to explain to the jury that the court had previously determined that the non-competition
agreement was valid and enforceable. Just prior to closing arguments, the trial judge issued
a verbal ruling denying Parker's motion to declare the non-competition agreement invalid,
stating she thought the agreement was valid. Cram does not point to any place in the record
where its attorneys then attempted to inform the jury of the trial court's ruling, nor is there
any readily apparent offer of proof by Cram. It is not this court's burden to scour the record
for alleged harm. See Tex. R. App. P. 38.1(h); Palmer v. Espey Huston & Assocs., Inc., 84
S.W.3d 345, 351 (Tex. App.--Corpus Christi 2002, pet. denied).

 Further, even if there were an offer of proof that was denied by the court, no harmful
error would arise. Cram Roofing presented testimony and documentary evidence about
earlier proceedings in both Hidalgo County and Bexar County in which the non-competition
agreement was enforced. Further, Cram Roofing was allowed to inform the jury of prior
rulings on the non-competition agreement during closing arguments when counsel stated that
Cram Roofing had a "valid, legal right to try to enforce [the non-competition] agreement.
And that valid, legal right was supported by two different courts in two separate counties in
this state." Counsel further argued that Cram believed he had a valid non-competition
agreement, and that "[t]wo separate courts and two separate counties in this state affirmed
how he felt ...." Under the circumstances, harmful error cannot be established. Cram
Roofing's fourth issue is overruled.

Mental Anguish Damages

 Cram Roofing challenges the legal sufficiency of the evidence supporting the jury's
award of $50,000 for mental anguish damages. We review a no evidence challenge under
a well-established standard. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983);
Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ denied).

 To recover damages for mental anguish there must be "'direct evidence of the nature,
duration, and severity of their mental anguish'" or other evidence that the plaintiff suffered
a "'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation,
embarrassment,'" anger, or, alternatively, an event beyond the vicissitudes of daily life.
Gunn Infiniti, Inc. v. O'Byrne, 996 S.W.2d 854, 860 (Tex. 1999) (quoting Parkway Co. v.
Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)). 

 Th e record establishes that following the dissemination of Cram's letters, Parker was
distraught and very upset. He became depressed, angry, and suicidal. His wife of fifteen
years became so concerned that she hid medication out of fear that he would try to overdose
on prescribed medicines. His family described him as a changed man who no longer was
easy going and jovial. Rather now he "just snaps." Economically Parker was devastated and
had to cash in life insurance policies to pay bills and endure the humiliation of not timely
paying bills. Based on our review of the record, we cannot say that Parker failed to prove
mental anguish damages. Cram's fifth issue is overruled.

 The judgment of the trial court is affirmed. 


 Catherine Stone, Justice